W. E. ONSTOTT ET AL., APPELLANTS, v. ILER L. OLSEN ET AL., APPELLEES.

142 N. W. 2d 919

Filed June 3, 1966. No. 36238.

Van Steenberg, Winner & Wood, for appellants.

W. H. Kirwin, for appellees.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and SCHEELE, District Judge.

SPENCER, J.

This action involves two principal questions. First, whether a fence now existing between Sections 3 and 4 in Township 19 North, Range 55 West of the 6th P. M. in Banner County is a division fence; and, second, whether either a public or private easement exists for the use of a road west of the fence line.

Plaintiffs are the record owners of the southwest quarter of the southwest quarter of Section 3, hereinafter called the Onstott forty. Defendants are the record owners of the southeast quarter of the southeast quarter of Section 4, hereinafter called the Olsen forty.

A survey by the county surveyor on January 14, 1961, indicates that the fence in question is actually 10.4 feet east of the section line on the southernmost point of the section, and 69.5 feet east of the section line on the north boundary of the north line of the two forties. It is to be noted that on exhibit No. 1, which is a drawing furnished by the county surveyor on his survey, a 1½-inch pipe and stone were found in the southwest corner of the Onstott forty, 9.4 feet east of the marker placed by the county surveyor to mark the southernmost point of the section line, suggesting some early survey had placed the section line at that point.

Plaintiffs' evidence is to the effect that William N.

Onstott purchased the Onstott forty in 1925. There was a fence which was supposed to be on the section line separating the two forties. At that time the Olsen forty was being farmed but the Onstott forty was used for grazing cattle. In 1927 William N. Onstott built a new fence, and to "get out of that ridge of sand" that had blown into the fence line he testified he placed it east of the old fence, entirely on the Onstott forty. At that time, plaintiffs' evidence would indicate that there was a trail road west of the fence from ½ mile north to the south section road, with gates at the south and north ends of the Olsen forty. The Onstotts testified they replaced the gates on occasion, but that they usually were left open. Plaintiffs testify to the hauling of machinery, gravel, and farm produce across this road from 1925 to 1959. Plaintiffs also adduced evidence to the effect that the road was on occasion also used by the general public. The fence, rebuilt in 1927, remained until November 1959, when it was taken down by William E. Onstott, who had entered into a contract to purchase the Onstott forty from his parents in 1950. The fence was later replaced by Iler L. Olsen, one of the defendants, in the some location except for a slight jog to avoid a power pole. When the fence was replaced, the defendants completely closed off any access to the purported trail road, and plowed it up.

Defendants contend that the fence has always been on the line of the original government survey, and refer to a stone near the south road as marking the southernmost point of the section line between the forties. This would place it approximately on the line where the 1½-inch pipe and stone were found 9.4 feet east of the section line, as shown by the last survey.

Defendants' witnesses testified that there never was a trail road west of the fence on the Olsen forty, but that one did exist east of the fence and it was used until the Onstott forty was plowed in recent years. The trail road went west of the fence in the forty, north of the Olsen

forty. Defendants, who acquired their forty in 1927, farmed it east and west as close to the fence as possible, and used the end for a turn row. It is their testimony that when they acquired the forty in 1927 it was being farmed clear to the fence. Defendants' evidence also indicates that there was a fence on the south of the Olsen forty so that it was completely enclosed, and that there was no gate in the southeast corner until they put one there in 1943 to provide access to land across the county road to the south owned by Iler Olsen's brother.

In 1956 a bridge across Pumpkin Creek, which was located north of the respective forties and south of the Onstott buildings, washed out. Thereafter, the plaintiffs drove across the east end of the Onstott forty to haul produce from their lands to the north, without objection from the defendant until a dispute developed in 1959. William E. Onstott attempted to get the county commissioners of Banner County to open a road west of the fence, but they refused to do so. In November 1959, he removed the fence. After the fence was removed, defendants stopped the plaintiffs from crossing what they considered their property, and replaced the fence. In doing this, they eliminated the gate at the southeast corner, excluding the plaintiffs from the area. This action resulted.

Each of the parties produced several witnesses to sustain their respective contentions. It will serve no useful purpose to detail that evidence further herein. Suffice it to say that it is in irreconcilable conflict. The court made a personal inspection of the area involved, but this was 5 years after the fence was replaced, and any road, if one existed, would have been completely effaced.

It is defendants' contention that the fence is a division fence between the two forties. William N. Onstott did testify that the fence he replaced in 1927 was supposed to be on the section line separating the two forties. Defendants insist the recent surveys were incorrect and contend that the fence is directly over the government sur-

vey line. It is their further contention that all the land west of the fence has been enclosed by fences since they purchased their forty in 1927; and that they have used it exclusively for their own purposes under a claim of ownership since 1927.

In Ohme v. Thomas, 134 Neb. 727, 279 N. W. 480, we held: "Where a fence is constructed as a boundary fence between two properties, and where the parties claim ownership to the fence for the full statutory period of ten years, and are not interrupted in their possession or control during that time, they will, by adverse possession, gain title to such land as may have been improperly inclosed with their own."

While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the other. Mentzer v. Dolen, 178 Neb. 42, 131 N. W. 2d 671. It is apparent that the trial court accepted the defendants' version of the facts in determining that the fence was a division fence, and constituted the east boundary of the Olsen forty. We affirm this finding.

The evidence is undisputed that the fence has been in its present location since 1927. There is a dispute as to whether or not at that time William N. Onstott rebuilt the fence in its then location, or moved it slightly to the east. Defendants claim that their forty was completely enclosed during this entire period. Plaintiffs dispute this. Plaintiffs' evidence, however, indicates some enclosure because they testify that there was a gate at the southern end which permitted access to the area west of the fence. Defendants' evidence is to the effect that there was no gate permitting access to the Olsen forty

from the south until they put one in for their own convenience in 1943.

While an inspection of the premises by the trial court may not have been helpful in determining whether a trail road ever existed west of the fence, he did have an opportunity to observe the witnesses and their manner of testifying, and on the record herein we cannot say that he did not reach the right conclusion in determining that the fence was a division fence between the two forties.

There is ample evidence from which it can be determined that the defendants claimed title to the land to the fence line since 1927; that they maintained actual, open, exclusive, and continuous possession during that period under a claim of ownership; and that any use made of the land by others during that period was purely permissive.

In Krimlofski v. Matters, 174 Neb. 774, 119 N. W. 2d 501, we held: "The claim of title to land by adverse possession must be proved by actual, open, exclusive, and continuous possession under a claim of ownership for the statutory period of 10 years. The possession is sufficient if the land is used continuously for the purpose to which it may be in its nature adapted."

What has been said heretofore also disposes of plaintiffs' claim of a public or private easement for the use of a road west of the fence line. We affirm the trial court's finding that the plaintiffs failed to prove the existence of a road or a road easement west of the fence line over the Olsen forty.

Of the Onstott witnesses, four of them testified to use of the property about the time the bridge over Pumpkin Creek was out. Of the others, other than the Onstotts, the brother of one testified for the Olsens; one claimed to have used the road for 6 or 7 years in the 1930s, but did not recall any fence; and the other testified that he used the road first in 1913 when he had worked for former owners, that he had used it occasionally while employed by the Onstotts, and had last used it in 1961.

The testimony is undisputed that the area was completely closed off early in 1960. All of the Olsen witnesses testified positively that there was no trail road west of the fence across the Olsen property. On the record, it cannot be said that the plaintiffs sustained their burden of proof on the existence of a road or an easement.

For the reasons given, we affirm the judgment herein.

AFFIRMED.