CARL WEBB ET AL., APPELLANTS, v. MARION LAMBLEY ET AL., APPELLEES.

148 N. W. 2d 835

Filed February 24, 1967. No. 36405.

Robert V. Hoagland, for appellants.

Samuel C. Ely and J. Marvin Weems, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH,

SMITH, and McCOWN, JJ., and KOKJER, District Judge.

SPENCER, J.

This is an equitable action brought by Carl Webb and Evelyn Webb, plaintiffs and appellants, against Marion Lambley and Bonnie Lambley, to enjoin the maintenance of certain alleged nuisances and for damages. Defendant Marion Lambley cross-petitioned for relief from an alleged spite fence. The action was dismissed as to Bonnie Lambley. Plaintiffs were substantially granted the requested injunction against the defendant Marion Lambley, but were denied any recovery of damages. Marion Lambley, who will hereinafter be referred to as defendant, was awarded injunctive relief on his cross-petition against the alleged spite fence. Plaintiffs have perfected an appeal to this court. They set out six assignments of error which involve only two points, the nature of plaintiffs' fence and whether plaintiffs are entitled to the recovery of damages.

Defendant is the owner of an $8\frac{2}{3}$-acre tract 650 feet north of the north city limits and 317 feet west of the west city limits of Ainsworth, Nebraska. Plaintiffs are the owners of a 5-acre tract adjoining the defendant's tract on the east. Defendant purchased his property from his mother in 1963. At that time, plaintiffs were renting the property and defendant paid the plaintiffs for a release of the lease. The record reflects that plaintiffs were unhappy about the sale because they believed they had an agreement for first chance at the property if it were offered for sale.

In the summer of 1963, defendant set a house on high ground in the northeast corner of his premises, facing east toward the property of the plaintiffs which slopes from the hill on which defendant's house was located. Defendant's front porch is approximately 50 feet west of the division line between the properties. In October 1963, plaintiffs began the construction of what they described as a windbreak 10 feet east of their west prop-

erty line facing defendant's front porch. The structure starts approximately 30 feet from the north line of plaintiffs' property. It is directly east of the defendant's house, starting on a line with the north end of the defendant's front porch, and then extends approximately 60 feet to the south. The structure is composed of rough boards and slabs, or, as plaintiff Carl Webb described it, "stray lumber," all of different lengths varying from 8 feet to 12 feet.

Plaintiffs' testimony would indicate the fence is intended as a windbreak which serves a useful purpose in protecting their sheep. Defendant's testimony would indicate the fence is of little benefit, if any, as a windbreak because of its nature and its location, and serves no useful purpose. The undisputed evidence is that the structure does shut off defendant's view to the east and does depreciate the defendant's property at least $3,000. The evidence is in irreconcilable conflict. The trial court inspected the premises and specifically found that the structure serves no beneficial purpose, is unsightly, is maintained for the purpose of annoying the defendant, and should be abated as it now exists.

While the law requires this court, in determining an appeal in an equity action involving questions of fact to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the other. Onstott v. Olsen, 180 Neb. 393, 142 N. W. 2d 919.

"Every one has the right to any beneficial use he may see fit to make of his own property, if the benefit he seeks is not out of all reasonable proportion to the injury caused to another." Bush v. Mockett, 95 Neb. 552, 145 N. W. 1001, 52 L. R. A. N. S. 736. Quoting from that opinion: " 'No one ought to have the legal right to

make a malicious use of his property for no benefit to himself, but merely to injure his fellow man. To hold otherwise makes the law an engine of oppression with which to destroy the peace and comfort of a neighbor, as well as to damage his property for no useful purpose, but solely to gratify a wicked and debasing passion.' " :  ·

The trial court inspected the premises herein. He observed the topography of the land, the nature of the structures, and other pertinent facts. The trial court is required to consider any competent and relevant facts revealed by a view of the premises as evidence in the case, and a duty is imposed upon this court on review of the findings made by the trial court to give consideration to the fact that the trial court did view the premises, providing the record contains competent evidence to support the findings. Wiese v. Klassen, 177 Neb. 496, 129 N. W. 2d 527.

Plaintiffs complain that the order of the trial court is indefinite because it abates the structure "as it now exists." The record indicates that except for this structure the plaintiffs' premises are neat and in keeping with the surrounding area. The trial court did not find that the plaintiffs should be enjoined from maintaining any fence or windbreak, but required them to abate the present one. From the location of the structure, the nature of the materials used, and the manner of its construction, we agree with the trial court its utility as a windbreak is at best only incidental to its placement.

Plaintiffs allege that the defendant permitted sewage from his septic tank to drain for 50 feet down a slope across plaintiffs' property into a stream running through their property. This drainage, which was basically water, froze during the winter months, creating an ice slide from 4 to 12 feet wide which was hazardous for registered horses plaintiffs were raising on the premises. Plaintiffs also allege that the defendant maintained three dog houses on his premises, 10 to 15 feet west of the pasture division fence, directly above where the seep-

age entered plaintiffs' property; and that these dogs were permitted to run at large, came onto plaintiffs' premises, and chased their horses. Plaintiffs further allege that the dogs and the refuse defendant permitted to blow across plaintiffs' property spooked their horses so that some of them slipped on the ice and were injured. Plaintiffs claim the ice slide, the dogs, and the refuse forced them to pasture their horses elsewhere and to convert to a sheep operation.

The testimony does not sustain the allegation that the defendant permitted his dogs to run loose. The undisputed evidence is that the dogs were chained to their houses at all times. The evidence indicates that while plaintiffs never saw the defendant's dogs chasing their horses, they did see them run out of their houses barking and scaring the horses. The defendant's evidence indicates that his dogs did not bark at plaintiffs' horses, and defendant testified they had been trained not to bark at livestock.

On the issue of damages, plaintiff Carl Webb testified to specific injuries to three of his animals. During the winter of 1963, a yearling mare was spooked by the dogs or flying paper, slipped on the ice, and sprained an ankle. He still owns this animal and is using it for the purpose originally intended, as a brood mare. One of his colts threw a stifle, and a gray mare with foal slipped on the ice and aborted the next day. He admitted that he did not know if the colt with the stifle slipped on the ice, and that he did not see the gray mare slip but saw a mark on the ice where he thought she had slipped. The testimony is undisputed that there are many causes for abortions and that horses will not cross ice unless they are spooked. Carl Webb also testified he did not know where the paper he saw blowing on his place originated.

Plaintiffs also claimed damages on the grounds that the nuisances which the court found to exist had forced them to abandon the use of the property for their regis-

tered horses and to convert to a sheep operation. They testified to an additional outlay of $845 to make the conversion.

The trial court found that defendant had changed the course of the drainage from his septic tank and had abated the nuisance prior to the trial, but because there could be a possibility of a recurrence defendant was permanently enjoined from permitting sewage to drain upon plaintiffs' property. The court further found that defendant before the trial had moved his dogs to another part of his property and any nuisance which existed had been thereby abated, but did permanently enjoin defendant from housing his dogs adjacent to the pasture fence or in any area close enough to the fence where they could harass plaintiffs' livestock.

The court specifically found that plaintiffs had failed to establish causation; that an inspection of the premises revealed that many hazards existed on the premises which could cause injury to livestock; that any proof on damages was indefinite or more or less speculative; and that plaintiffs were not entitled to damages. We cannot say that this finding is erroneous on the record herein.

For the reasons given, the judgment herein is affirmed.

AFFIRMED.