GERALD E. ROLFSMEYER ET AL., APPELLANTS, V. SEWARD
COUNTY ET AL., APPELLEES.

154 N. W. 2d 752

Filed December 8, 1967.   No. 36602.

Russell A. Souchek, for appellants.

Byron J. Norval, Ivan A. Blevens, and Dredla & Dredla, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

The issues in this case ultimately revolve around the

question of where the natural drainway of the surface waters which entered into and arose on the plaintiffs Rolfsmeyers' land was located.

This is an action in equity wherein it is alleged that the defendant, County of Seward, Nebraska, had removed culverts from the county road bordering plaintiffs' land and raised said road forming a dike which blocked the natural drainageway of plaintiffs' land causing flooding and erosion. Plaintiffs generally sought an injunction requiring the defendant County to open the drainageway by appropriate culverts and the deepening of the ditches along the roadway. The County of Seward and the defendant property owners joined herein generally deny the allegations of the plaintiffs' petition and cross-petition alleging that the plaintiffs had diverted water from the natural drainageway on the plaintiffs' land and that such water was being diverted to, onto, and across the county road and onto the lands of the defendant private property owners, Havlats, Siedhoffs, and Francls. The defendants, in their answers, allege that the natural watercourse and the natural surface drainage were entirely on the plaintiffs' own property; and they generally ask for equitable relief requiring the plaintiffs to remove all dikes, levees, or other obstructions across said natural drainageway or waterway, that they be restrained from obstructing the natural drainageway and from diverting the surface waters on their land onto the land of the defendants, and for other equitable relief. The trial court found generally in favor of the defendants, granting them relief on their cross-petitions and also granting some relief to the plaintiffs. Plaintiffs have appealed.

As we have suggested the issue in this case is almost entirely factual. No question as to the law is presented or is necessary for decision. The record is extremely voluminous and the facts are quite complex in nature and may be better understood in perspective by a preliminary view of the elementary principles of the law

involved in this case. The law in Nebraska with reference to diffused surface waters and natural drainageways is well settled. Surface waters are waters which appear upon the surface of the ground in a diffused state, with no permanent source of supply or regular course, which ordinarily result from rainfall or melting snow. Nichol v. Yocum, 173 Neb. 298, 113 N. W. 2d 195; Courter v. Maloley, 152 Neb. 476, 41 N. W. 2d 732. With reference to such waters, the owner of land may collect diffused waters, change their course, or pond them upon his land, or cast them into a natural drain without liability. He may not, however, collect such waters and divert them onto lands of another except in depressions, draws, swales, or other drainageways through which such waters were wont to flow by nature. Linch v. Nichelson, 178 Neb. 682, 134 N. W. 2d 793. And when diffused surface waters gather in volume in velocity or flow into a natural depression, draw, gulch, or drainway, such waters are not subject to the rule that they may be dammed, repelled, or diverted without liability as in the case of diffused surface waters. Nichol v. Yocum, *supra*.

Plaintiffs are the owners of the northeast quarter of Section 31, Township 9 North, Range 4 East, Seward County, Nebraska. This we shall hereafter refer to as the Rolfsmeyers' land. Defendants Welsch owned a quarter section immediately to the west of Rolfsmeyers' land, which we will refer to as the Welsch land. Defendants Havlat owned the land abutting Rolfsmeyers' land on the north side across the county road and the Havlat land also abuts the eastern half of the Welsch quarter. The lands owned by the defendant Helen Siedhoff Francl and farmed by defendants Siedhoff abuts the Rolfsmeyers' land on the east. A county road runs east and west on the north side of Rolfsmeyers' land and the Welsch land, separating these lands from the Havlat land. At the northeast corner of Rolfsmeyers' land, this road turns and goes in a southeasterly direction on an old railroad grade. This county road has no culverts or

other openings or passages for the flow of water from the south to the north.

Prior to 1953 the lane to the improvements on Rolfsmeyers' land ran southward from the county road on the north along the north-south centerline of the Rolfsmeyers' land. This lane and the location thereof will be referred to as the old "in road." In 1953 the plaintiffs built a new lane some 700 feet west of the old "in road" and this lane will be referred to as the new "in road." The new "in road" parallels the old "in road" through the north portion of Rolfsmeyers' land.

The evidence of the plaintiffs Rolfsmeyers is that the water which now flows onto their property from the west has two natural drainageways. The largest amount enters the Rolfsmeyers' land about 600 feet south of the northwest corner of the Rolfsmeyers' land draining some 240 acres to the west principally from the Welsch quarter. There is evidence that some of the water from this drainage, as it entered the Rolfsmeyers' land, drained northeast to and across the county road in the area of the new "in road" and west of it. Plaintiffs' evidence tends to show that the balance of this water along with the drainage from the Rolfsmeyers' land itself drained easterly across the new "in road" where two culverts are now located to a low area near the north-south centerline of the Rolfsmeyers' land. This low area is on or near the old "in road" and is now marked by a telephone line. From this low point the water, according to the plaintiffs' testimony, drains northeasterly for a short distance and then in a northerly course across the county road to the Havlat land. There is testimony that a natural ridge had existed on the Rolfsmeyers' land beginning about 100 feet west of the northeast corner of said land and running north and south across the north half of the land, preventing water draining on the Rolfsmeyers' land from the west proceeding any further to the east.

A lesser amount of water from about a 10-acre tract

in the northeast corner of the Welsch quarter drains northward to the county road, down the graded ditch on the south of this road, and onto the Rolfsmeyers' land. It seems undisputed, with reference to this small amount of water, that the natural drainage was across the county road northward instead of to the east. The court required the County to install a small culvert to drain this water to the north and to erect a ditch block to the east. This issue appears to be minor. The decision of the court in this respect is unappealed from and will not be further discussed.

Plaintiffs' evidence tends to show that commencing in 1942 and at certain times since then, the defendant County has removed two culverts then existing, graded up the road, which at the northeast corner of the Rolfsmeyers' land was level with the land, some 3 or 4 feet, and that the County has also placed an additional accumulation of dirt on the south shoulder of the county road of some 2 or 3 feet. The contention is that this latter with the elevated grade creates a dike preventing water from both sources from draining in its natural path and forcing the water to run southeasterly across the plaintiffs' land to the 48-inch culvert under the county road on the old railroad grade. This forced drainage, it is contended, has made a portion of the Rolfsmeyers' land unfit for crops and has caused severe erosion. This damage has been compounded, it is contended, by the failure of the County to properly maintain and keep clear the south road or grader ditch of the county road up to the northeast corner of the Rolfsmeyers' land and then southeastward to the culvert of the old railroad grade. Relief is asked to provide for drainage of the road to the north of the Rolfsmeyers' land by way of culverts, digging out the grader ditch, etc.

Defendants' evidence, which is most convincing and persuasive, is that the general drainage of the Welsch quarter was eastward from a ditch which entered the Rolfsmeyers' land at a point about 800 feet south of the

northwest corner of the Rolfsmeyers' land. This drainage was and has been in substantially the same direction and course as claimed by the plaintiffs except that: (1) The water did not drain in part northward to and across the county road onto the Havlat land at the new "in road," and (2) from the point east of the old "in road" where the plaintiffs allege the natural drainage was northward onto the Havlat land, the defendants' evidence is that the natural drainage was southeasterly to the culvert under the old railroad grade.

The evidence is convincing, and almost undisputed, that when the plaintiffs constructed the new "in road" 700 feet further to the west of the old "in road" that this created a dike in the natural drainageway and that the culverts installed by the plaintiffs were almost completely inadequate to handle the natural drainage of the water to the east. The defendants' evidence shows, and we believe it is established, that the plaintiffs had constructed a ditch on the west side of this new "in road" forcing the water northward to the county road and the Havlat land. We now reach the situation with reference to the drainage of the water east of the new "in road" and after it reaches the old "in road." It is this contention that forms the main dispute in this case. The defendants' evidence is that the plaintiffs are diverting water east of the old "in road" by means of a ditch, forcing the water to flow north to the county road and the Havlat land and that this was not the natural drainage of the water. The evidence is undisputed that along the old "in road" a short distance south of the county road there was a "low, wet place," that the owner covered with cement at one time so that it could be crossed with less difficulty. The evidence is also undisputed that the plaintiffs have cut through the north bank or slight ridge that forms the edge of the drainage course across their land close to where it borders the county road. Besides the voluminous other evidence on this point, we view as significant, as the trial court did after an in-

spection of the premises, that the fact that the plaintiffs have had to keep open this ditch running north to the county road is evidence that this is not the course of the natural drainage. The evidence in this case is convincing that the natural drainageway extends entirely across the land of the plaintiffs near its northern edge, but not extending to the county road and only a very small portion of the water naturally goes over on the north bank of the drainageway to the county road in times of excessive moisture. We also point out that the drainageway coming from the Welsch land to the dike on the new "in road" is actually large enough and definite enough to meet all of the qualifications of the legal definition of the term "watercourse." In fact, the plaintiffs have themselves constructed and made several terraces to bring the water from the south to this drainageway. The evidence shows, and the trial court found, that the water east of the new "in road" also follows a definite course across the plaintiffs' land from the two culverts to the area of the telephone line that marks the line of the old "in road." The drainageway, the evidence shows, has definite shape and has a plainly visible course with definite banks. The north bank is a slight ridge and beyond that for a short distance there is a natural drainageway of the water into the south ditch of the county road, but this is of minor significance with reference to the issues and decision in this case. We come to the conclusion, as the trial court did, that the drainageway after it leaves the two culverts and goes east from the new "in road" proceeds northeast towards the county road but it does not go to the county road or across it, but turns east and southeast on plaintiffs' land and east to the old railroad culvert on the old railroad grade.

With this factual resolution of the case on the basic issue, the decision in this case seems to be clear. Of particular significance in this case in the light of the nature of the issues and the conflicting testimony as to the actual topography of the land, is the fact that the

trial court made a detailed and lengthy inspection of the premises in question. The trial court is required to consider any competent and relevant facts revealed thereby, and its findings and decision in the district court properly reflect its observations and findings based thereon. It is the duty of this court, on review of the findings made by a trial court when it has made an inspection of the premises and has given consideration to the competent and relevant facts revealed thereby, to give weight thereto. Webb v. Lambley, 181 Neb. 385, 148 N. W. 2d 835; Wiese v. Klassen, 177 Neb. 496, 129 N. W. 2d 527. Also, we point out that to the extent there has been a conflict in the evidence in this case, this court, on review, while required to reach independent conclusions on questions of fact, will, in determining the weight of the evidence where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the other. Webb v. Lambley, *supra;* Onstott v. Olsen, 180 Neb. 393, 142 N. W. 2d 919. Further analysis of the evidence is perhaps unnecessary. We do point out, however, that the plaintiffs admit that the old driveway they used would become submerged with water as the water drained toward the east and that to remedy this situation they constructed the new driveway or the new "in road" approximately 700 feet further to the west on higher ground and installed the culverts to permit the water to proceed eastward. By a clear preponderance of the evidence, the natural drainway involved in this action commenced on the west, coming from the Welsch property, flowed through, upon, and out of the Rolfsmeyers' land in a state of nature. The exhibits introduced and the evidence tend to show that this situation has existed for a period of over 60 years with reference to this property. The trial court found in its judgment that the water coming from the Welsch land runs in a natural watercourse and drainageway across the Rolfs-

meyers' land from its point of entry to the two culverts in the new "in road," thence east and northeast to the low point in the old "in road," thence northeast towards the county road, and thence turns east and southeast without leaving the county road and leaves the Rolfsmeyers' land on the east at the culvert in the old railroad grade. The trial court further found that the above drainage had a north bank, north of which diffused surface water flowed northward, and which bank had been cut at two different points by the plaintiffs forcing water to flow northward from the drainage flowing east. In its judgment the trial court found and required the plaintiffs to close the ditches and restore the north bank of the natural drainageway on this property and to provide suitable openings for the passage of the water through the new "in road" or dike. The detailed findings and requirements in this respect need not be repeated here. They are in all respects correct and are affirmed. With respect to the areas east of the new "in road" on plaintiffs' property, the court ordered the plaintiffs to fill the ditch that they have cut through the north bank of the drainageway near the old "in road," required them to desist from cutting through the slight ridge that forms the north bank of the drainage course across their land, and determined that they should be required to let the water drain to the east. The trial court carefully protected and preserved the plaintiffs' rights as has already been seen in requiring the County to take steps to protect the natural drainage from the small acreage on the Welsch property that did drain to the north. The court also required the County to take care of the diffused surface water that does actually flow north into the south ditch of the county road from the small area north of the north bank or ridge of the natural drainageway. It required that the County should build an outlet for it by building and maintaining a ditch along the south side of the road and to the culvert under the railroad grade or alternatively, requiring the County to install

and maintain a small culvert through the county road near the northeast corner of plaintiffs' land or both. It becomes unnecessary to review the other findings of the district court in this case. They are in all respects approved and affirmed.

The plaintiffs also assign error for failure of the court to grant a motion for a new trial because of newly discovered evidence. The record shows that the two new witnesses upon which this contention is based were either relatives or well known to the plaintiffs and their evidence easily discoverable during the period of almost 2 years that this case was pending before trial. There obviously is no merit in this contention.

Plaintiffs also assert error in the taxing of the costs to the plaintiffs in this case. This is an equity case and the taxing of costs rests in the sound discretion of the court. It is true that some relief was granted to the plaintiffs in this case but the relief granted was comparatively minor and incidental in nature. We further note that defendants were granted affirmative relief in this case. In light of these circumstances, we find no abuse of discretion in the trial court's findings and determining that the plaintiffs should bear the burden of the costs of this litigation against the neighboring landowners and the County in which they failed to sustain the burden on the major issue involved in this case.

The judgment of the district court is in all respects affirmed and all costs in this court are taxed to the plaintiffs.

AFFIRMED.

CARTER, J., participating on briefs.