Lois M. Lunzmann, appellant, v. Raymond E. Yost et al., appellees.

153 N. W. 2d 294

Filed September 29, 1967. No. 36416.

Wellenseik, Morrissey & Davis and Moran & James, for appellant.

Spencer & Hoch, for appellees.

Heard before White, C. J., Spencer, Boslaugh, Smith, McCown, and Newton, JJ., and C. Thomas White, District Judge.

(101)

WHITE, District Judge.

This is a boundary case. The plaintiff Lunzmann, appellant in this court, brought an action against the defendants Yost in the district court to quiet title to a triangular strip of land in Lot 24 of Ware's Division, located in Section 4, Township 8, Range 14, Otoe County, Nebraska. The plaintiff, in the district court, relied on adverse possession and on the theory that the plaintiff and defendants purchased adjoining lands with reference to a common boundary as marked by a common grantor, and that the line, as so marked, is binding on the parties, even though it conflicts with a metes and bounds description. The trial court found generally for the defendants and dismissed the plaintiff's petition.

The part of Lot 24 with which we are concerned, and of which the Lunzmann and Yost tracts are a part, is an irregular tract of land, the north and south lines of which run in an east-west direction, the west line of which runs at an interior angle of 94.25 degrees to the south line along a course measuring 370 feet from the south line to the north line. From the south, the east line of the tract parallels the west line of the tract for 100 feet. At this point, the east and west lines are 165 feet apart, the line then taking a more northwesterly course to where it narrows to 90 feet at the north line of the tract.

The evidence discloses that the entire tract was owned by John W. and Gladys M. Neihart, who, on February 14, 1944, contracted to sell it to Richard Starner, also spoken of in the record as William Starner, and Myrtle Starner. The Starners assigned the contract on April 6, 1946, to Mason L. Colbert, and, on that same day, the Neiharts conveyed the tract to Colbert. The transaction, in the form of an absolute conveyance, was, in substance, a mortgage, with Colbert advancing money to pay the balance of the purchase price to the Neiharts and holding the title to the real estate as security for payment by the Starners. It was, in any event, so treated by the parties.

The entire tract was subsequently disposed of in 5 parcels. Colbert, the record owner, took no active part in the transactions leading up to the sales other than signing deeds prepared for him. All negotiations were by Richard Starner. The tract was not surveyed before the sales except as to the sale to the plaintiff Lunzmann.

The first parcel was sold by Starners to Shoemakers and was the southernmost parcel, which, by deed description, ran from the south line 100 feet along the west line, east to the east line of the tract, south 100 feet to the south line of Lot 24, thence west to the place of beginning.

The next parcel sold was immediately north of the Shoemaker parcel and described a tract as beginning at the northeast corner of the Shoemaker parcel, thence north along the west side of a traveled road 55 feet, then west 137 feet, thence south 55 feet, thence east 165 feet to the point of beginning. This parcel was sold on June 4, 1955. Stakes were driven at the northeast and northwest corners of this tract. This tract was sold to Paul McMullen and wife.

The property of the defendants Yost is immediately north of the McMullen tract and was conveyed to them on February 4, 1956. The tract is described as commencing at the northeast corner of the tract sold to Paul V. McMullen and Pearl McMullen, thence west 137 feet, thence north 55 feet, thence east to the west line of said traveled road (the east line), thence southeasterly along the west line of said road to the place of beginning.

It is substantially the plaintiff's contention that the defendants' line is 55 feet northwest of the northeast corner of the McMullen tract, and that stakes were placed thereon at the time of the conveyances with knowledge of the defendants. The line claimed by defendants as the true line would have as its eastern terminus a point 57.48 feet north of the northeast corner of the McMullen tract. The plaintiff relies on the stakes, and the defendants rely on the description contained in their deed.

The plaintiff's tract is immediately north of the Yost

tract, and was conveyed to a predecessor in title by Colbert on May 21, 1957, and subsequently conveyed to the plaintiff on January 3, 1962. The plaintiff's tract was described as commencing at a point on the west right-of-way line of a public road across said Lot 24, 95 feet directly south of the *north line* of said Lot 24; thence west on a line 95 feet south and parallel with the said north line of Lot 24, 104 feet; thence south 80 feet; thence east on a line 175 feet south of and parallel with the north line of said Lot 24, 124 feet; thence northwesterly along said right-of-way line 83.65 feet to the point of beginning.

The description in the plaintiff's deed is in harmony with the description in the defendants' deed, but not with plaintiff's contention here. The east and west lines in all deeds of the various tracts are parallel with the north and south boundary lines of Lot 24.

The evidence fails to disclose any conflict between the defendants and their grantor Colbert as to the northeast corner of the tract purchased by defendants. It further fails to disclose any conflict or adverse use by the plaintiff's grantor Shoemaker against the defendants. There is a complete lack of evidence that anyone other than the defendants occupied the disputed strip to the date of the conveyance to plaintiff, which was in 1962, and which conveyance was entirely consistent with the description of defendants' tract and the land claimed here. There is evidence of a dispute as to the true corner, but all of it after 1962.

Even conceding for purposes of argument that the plaintiff's use after 1962 met the requirements of adverse possession, no evidence being presented of previous adverse claims to which the plaintiff could tack her claim, the contention of adverse possession must fall. The plaintiff having failed to establish the required elements of adverse possession for the statutory period, the relief must be denied. McDermott v. Boman, 165 Neb. Neb. 429, 86 N. W. 2d 62.

The plaintiff further contends, however, that the de-

fendants could not properly be held to be entitled to a decree quieting title to the disputed tract since they had not held it for the required statutory period. The trial court, in its memorandum, specifically found that defendants' deed correctly reflected the intention of the parties and described the tract the defendants claim. The defendants claim under a deed of record from an acknowledged record owner. The plaintiff must recover on the strength of his own title and not upon the weakness of his adversary's title. McDermott v. Boman, *supra*.

The plaintiff further asserts that the plaintiff's predecessor and the defendants, as purchasers from a common grantor, purchased with reference to a boundary line as marked by the common grantor, such line is binding upon such owners and their successors regardless of the length of time which has elapsed. Thiel v. Damrau, 268 Wis. 76, 66 N. W. 2d 747; Maes v. Olmsted, 247 Mich. 180, 225 N. W. 583.

The evidence with respect to the common boundary line may be summarized as follows: The witness William Starner testified that at the time tract 3 was sold to the defendants Yost, stakes marking the northeast and northwest corners of the Yost tract were driven and that the defendant Raymond Yost was present at the time. However, the witness testified that it was his intention that the east-west lines of each lot as it was sold be at the same angle and parallel the boundary lines of Lot 24. Clarence D. Starner, a son of William Starner, testified to the same effect. James A. Shoemaker testified that at the time he purchased tract 4 (subsequently sold to the plaintiff), the tract was purchased with reference to stakes found at the northeast and northwest corners of the Yost tract, and that at the time tract 4 was sold to the plaintiff, the stakes were still present and pointed out to Mrs. Lunzmann, and that when the defendants erected a home on tract 3, the witness used the stakes to string a line in order to properly locate the basement on the tract. Thelma Shoemaker, the wife of James, testified

she saw the string at the time of the construction. Marvin Almquist, the Otoe county surveyor, testified that at the request of the plaintiff, he located an iron pipe on the southeast corner of the plaintiff's tract at the point claimed by her. The survey was made August 7, 1965. The plaintiff testified that at the time she was negotiating for purchase of tract 4 with the Shoemakers, the iron pipe, marking the southeast corner of the tract, was pointed out to her, and that she purchased according to the stakes, even though her deed does not reflect the southeast corner marked by the iron pipe as the southeast corner.

County surveyor Almquist was also called as a witness for the defendants and testified that he prepared a survey according to the descriptions contained in the deeds; that at the time he made the survey in exhibit 15 on June 18, 1965, he did not recall finding a steel stake at the claimed corner of the plaintiff's tract, but testified that on August 7, 1965, he found a stake. The finding of the stake in August and not in June is not explained in the record. The defendant Raymond Yost testified that at no time did anyone point out to him a stake as marking his northeast corner, and that he relied on the description in his deed. The defendant Esther Yost, wife of Raymond, testified to the same effect as her husband.

The cross-examination of the witness William Starner was to the effect that each east and west division line was at the same angle to the west line, and was intended to be. The cross-examination of the plaintiff indicates that at the time she purchased tract 4 from the Shoemakers, the abstract was examined by her attorney and a survey was ordered, which was certified on December 11, 1961, by C. A. Shannon, then Otoe county surveyor. The survey, procured by plaintiff through her attorney and attached to her abstract of title, recites that wooden stakes were fixed by the surveyor at the corners fixed by the description in the deed. The deed to the plaintiff was executed on January 3, 1962. It is obvious that

even if the testimony of the plaintiff and James Shoemaker with reference to the iron stakes is true, nevertheless, the plaintiff knew, as a result of the Shannon survey and the wooden stakes placed thereon, that the wooden stake at the southeast corner was north of the iron stake. We fail to see how the plaintiff relied on the iron stake as her southeast corner, in view of this fact.

While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the other. Onstott v. Olsen, 180 Neb. 393, 142 N. W. 2d 919; Webb v. Lambley, 181 Neb. 385, 148 N. W. 2d 835.

The evidence tends to support defendants' contention that, as reflected by the deeds, the east-west lines of all tracts were intended to be at the same angle in a true direction; that plaintiff and defendants never came to an understanding as to a common boundary; and that, in fact, the plaintiff did not rely on the iron stake as she claimed. The trial court having come to the same conclusion, the judgment is affirmed.

AFFIRMED.