MARK H. BURROUGHS a/k/a M. H. BURROUGHS
AND FOX BURROUGHS *v.* STATE
OF MARYLAND

[No. 810, September Term, 1973.]

*Decided June 19, 1974.*

The cause was argued before MENCHINE, MOORE and LOWE, JJ.

*Harry Sadoff* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Thomas J. Clark, State's Attorney for Queen Anne's County,* and *J. Thomas Clark, III, Assistant State's Attorney for Queen Anne's County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Mark H. Burroughs, also known as M. H. Burroughs and Fox Burroughs, was convicted of obtaining money under false pretenses, (violation of Article 27, § 140) after a bench trial in the Circuit Court for Queen Anne's County. He was sentenced to a term of one year imprisonment, three months of which were required to be served with the balance of the term suspended under conditions of probation.

His appeal questions the legal sufficiency of the evidence

to convict. He also suggests error in the admission of evidence of a prior conviction.

### Sufficiency of Evidence

In *Polisher v. State,* 11 Md. App. 555, 560, 276 A. 2d 102, 104, we said:

> "The false pretense is the crux of the crime. So the crime is committed when a person:
> 1) by making a false representation of a past or existing fact;
> 2) with intent to defraud; and
> 3) knowledge of its falsity;
> 4) obtains any chattel, money or valuable security from another;
> 5) who relies on the false representation;
> 6) to his detriment."

We find that the State failed to prove the first element of the offense as outlined in *Polisher, supra.* We thus find it unnecessary to deal with the other elements of the crime.

Here, the question whether there was or was not a false representation of a past or existing fact must be determined from the testimony of F. Tobey King (the person allegedly defrauded) and from the language used in a "timber agreement" executed by appellant and admitted in evidence in the course of King's testimony. The testimony of King relating to an alleged misrepresentation of a past or existing fact will be set forth herein in detail. That testimony was as follows:

> "Q Now, whose property was this?
> A He said it was his, Easton Land Company.

> * * *

> Well, we had a contract drawn up, and I paid him $2500 deposit, and we signed the contract.

> * * *

> He had this lawyer draw it up.

> * * *

Q Now, tell me, Mr. King, at anytime did Mr. Burroughs ever purport not to be the owner of this property?

A No.

Q At all times he claimed to be the owner of this property?

A Yes.

\* \* \*

Q At anytime did Mr. Burroughs ever infer that this land was under contract of sale?

A Not that I know of. I know he said he had bought the land and he was going to develop it.

\* \* \*

Q Now, can you say with certainty, Mr. King, that during those 10 or more conversations which you had with Mr. Burroughs that he didn't at anytime indicate to you that this property was under contract of sale to him?

A Contract to buy?

Q Contract to buy, yes.

A *He told me he owned the property.* \* \* \*
*He said he had recently bought the property.*

Q *Had recently bought it, but was anything said about whether or not the settlement was held?*

A *No, I don't think he would discuss that with me,* he didn't have any reason to discuss it with me.

\* \* \*

Q And during those discussions and later *ones you don't remember ever hearing Mr. Burroughs relate to you the exact status of the title of the real estate?*

A *Except that he owned it, it was his property."* (Emphasis added.)

Under a written contract dated May 20, 1971 entitled "Timber Agreement" the appellant, (describing himself as "owner") authorized Ray-King Timber, Inc. "to cut, saw and log" timber on a tract of land near Harrington, Delaware. F. Tobey King and Burroughs visited the tract before the contract was executed and prior to King's entry upon the land to remove the timber therefrom. On the same date Ray-King Timber, Inc. issued a check payable to M. H. Burroughs for $2500, drawn upon the Sudlersville Bank of Maryland as a deposit subject to later adjustments between the parties. The check, bearing the endorsement "M. H. Burroughs" and the Notation "Easton Land Company," was cashed by appellant on May 21, 1971 at the bank in Sudlersville, Maryland. The monies derived by appellant from that check never were returned to the corporation.

The timber agreement was executed and the check delivered at Millington, Queen Anne's County, Maryland.

Appellant defended upon the ground that he was the equitable owner of the property. To support his claim he submitted a document dated April 12, 1971, executed by H. Brandt King and Jane B. King as "sellers" to Virginia Lee Schultz as "buyer." He then offered in evidence an assignment dated May 19, 1971, whereby Virginia Lee Schultz transferred all her right, title and interest in the land to M. H. Burroughs, t/a Easton Land Company. No evidence was offered by the State that would tend to contest the validity of those two documents.

In 92 C.J.S. *Vendor and Purchaser* § 311, it was said at page 192:

> "Unless there are restrictions against assignment, the holder of a bond or contract for the purchase of land may assign his interest therein, * * *"

Maryland adheres to this general rule. In *Kingsley v. Makay*, 253 Md. 24, 251 A. 2d 585, the Court of Appeals upheld the right of multiple assignees of a contract for sale of land to obtain specific performance from an original vendor, who

had not been a party to the assignments. It was said at page 28 [587]:

> "Even granting the permissibility of the recording of the paper writings by means of which Bold accomplished the transfers of his equitable interest in the property, we know of no statute which makes the validity of those transfers dependent upon recording."

The land contract of sale from the Kings to Schultz, although titled "Purchase Offer and Deposit Receipt," was for an outright sale, without conditions other than requirements for payments of the purchase price of $55,000. The vendors of that land contract of sale were H. Brandt King and Jane B. King, former residents of Dover, Delaware, who resided in Geneva, Switzerland at the time they executed the contract of sale. The State made no effort to show that execution of the contract by the Kings was obtained by Burroughs or Schultz by fraud or misrepresentation. More, the record shows that H. Brandt King and Jane B. King were holders of record title of the land from which the timber was to be cut and that F. Tobey King, alleged victim of false pretenses, subsequently acknowledged their title to the land and desisted from his logging operation on the tract after protests by their agent. The land contract of sale executed by H. Brandt King and Jane B. King had provided, *inter alia*, "buyer to have full control of the farm land (417 acres) for the year 1971 upon the signing of this contract." That contract contained no prohibition against assignment by Schultz.

The documentary evidence demonstrates that the land contract of sale to Schultz and the later assignment of the rights under it to the appellant operated to vest in Burroughs equitable title to the tract from which the timber was to be cut.

Appellant's testimony showed, without contradiction, that he had attempted, unsuccessfully, to obtain full legal title. Burroughs acknowledged that transfer of legal title to himself from the Kings never was made, but said that:

"* * * My attorney, Harold Schmittinger, wrote Herman Brown, attorney for H. Brandt King, on three occasions and advised that I was prepared to make full settlement."

He also testified that, "Through the chain of titles there are three mortgages not released in accordance with the record." The time for settlement under the land contract of sale had not expired when the "timber agreement" was executed.

The totality of the evidence against the appellant shows no more than that under those circumstances he had asserted that he was "the owner" of the property.

In 32 Am. Jur. 2d *False Pretenses* § 30 (1967) it was said:

"§ 30. Title or ownership.

A conviction of obtaining money by false pretenses may be based on a false representation that the defendant was the owner of property, either real or personal. Such a conviction may also be based on a misrepresentation with respect to the title to property. But one cannot be convicted of obtaining money or property by false pretenses on the basis of a representation of ownership where at the time the representation is made the person making it has an equitable interest in the property, such as an enforceable contract to purchase or an option to buy. * * * "

In *Graf v. State*, 225 N. W. 466 (S. Ct. Neb. 1929), the appellant had been convicted of obtaining money by false pretenses. The court at page 467 said:

"The most that the evidence shows is that defendant said he owned the land and referred to it as 'my land.' The question then arises: What is the significance of the use of the word 'own?' An owner of land may have only a limited interest in it. One may properly say that he owns land, even though it may be incumbered by mortgage for its full value. He may be the owner of the land when he has no record title, but is entitled thereto; and, upon the

other hand, one may have the record title when, in fact, he may have nothing but the bare, naked legal title, and another may be the equitable owner. The word 'owner' is one of wide and extensive meaning when applied to real estate. It includes a rightful proprietor; one who owns the fee; one who has an estate less than a fee; any one who owns an estate in lands; the person entitled to the legal estate; any one who has an equitable right to or interest in land, or one who has any right which, in law or equity, amounts to ownership in the land.

* * *

We think it must be conceded that defendant had an equitable interest in the land by virtue of the contract and deed to him in escrow from the owner of the legal title, and, under the authorities above cited defendant could truthfully say that he was the owner of the land, although he was not the owner of the fee and was not entitled to a deed until he had met the payments due to his vendor. * * * Under the circumstances, we are forced to the conclusion that the verdict is not sustained by the evidence.

In view of the testimony of Krause, the complaining witness, that defendant did not at any time represent to him that he was the owner of the record title, a conviction could not be had upon a subsequent trial.

For the reasons given, the judgment of the district court is reversed and the action dismissed."

In *Criner v. State,* 109 So. 417 (S. Ct. Fla. 1926), the appellant had represented that he owned a tract of land. It was contended that this representation was false in that his title to the land was unmarketable and defective. The Court reversed conviction without a new trial, saying at page 420:

"It is no violation of the criminal laws of this state for one who actually has title to land to claim it as his own, and to sell it, even though some one

else may have a better title to it. Titles are matters of record and possession, and are open to any one who may care to investigate, and the prospective purchaser can usually protect himself by such an investigation.

One claiming to own property to which he has no semblance of title might be guilty of criminal conduct, if he induced some one to purchase it upon his claim of ownership. But not so where he actually has some kind of title to the property, and the relative strength of two conflicting claims is a matter of opinion, for even the highest courts of the land are not always in accord on this subject of conflicting claims of title."

To the same effect is *State v. Eudaly*, 188 S.W. 110 (S. Ct. Mo. Div. 2, 1916), wherein the Court said at pages 112, 113:

"In this case the state merely showed that the defendant represented himself to be the owner of the property in question and agreed to execute and deliver at some future time a deed thereto, and that he not only failed to execute and deliver the promised deed, but later admitted that he had not yet procured his deed, but had only a contract for a deed. The defendant's evidence is to the effect that he had purchased and paid for the property and had a contract for a deed thereto, and that he honestly believed at the time he made the statements that he was the owner of the property. The state did not undertake to show that his contract for a deed was not genuine, nor that the parties who executed same were not the legal owners of the property, nor that they could not, or would not, execute a deed to him.

The evidence offered by defendant is sufficient for the purpose of this prosecution to at least create a presumption that such persons had the legal title, and that but for temporary causes, some of which the prosecutrix was responsible for, a deed would

be executed. None of this evidence was rebutted, and there is nothing in the state's showing that is in any manner contradictory thereof. If the uncontradicted testimony produced by the defendant be true, he was at the time he made the representations the equitable owner of the property, although at the time he did not have such legal evidence of title as constituted him the legal owner. If it were admitted that his contract for a deed were sufficient to enable him to procure a decree of specific performance, there could be no question as to his being the owner of the property at the time of the transaction. If, on the other hand, it be contended that the contract is not in such form as to enable him to do so, it is at least sufficient, upon the showing disclosed by this record, to warrant the honest belief on his part that he was the owner, and this would constitute a complete defense to the criminal charge."

*Cf. Dwoskin v. State,* 74 N.W.2d 847 (S. Ct. Neb. 1956).

That a vendee under a contract for the sale of land acquires equitable title to that land is well settled in Maryland.[1] In *Kinsey v. Drury,* 146 Md. 227, 232, 126 A. 125, 127, it was said:

"The effect of such a contract is to vest the equitable ownership of the property in the vendee, subject to the vendor's lien for unpaid purchase money, and to leave only the legal title in the vendor pending the fulfillment of the contract and the formal conveyance of the estate."

See also: *Motels of Md. v. Baltimore County,* 244 Md. 306, 313, 314, 223 A. 2d 609, 613, 614.

In the subject case the most that the record shows is that the appellant, at a time when he was vested with equitable title to land as vendee under a subsisting contract of sale

---

1. No notice having been given of an intention to rely on foreign law, we will presume that Delaware law is the same as that of Maryland. Art. 35, § 50; *Coppage v. Resolute Insurance Co.,* 264 Md. 261, 269, 285 A. 2d 626, 631.

specifically authorizing him to "have full control of the farm land (417 acres)," referred to himself as the "owner" of that land. Under his uncontradicted testimony his failure to gain legal title to the tract was the fault of the vendor.

The cases of *Graf, Criner* and *Eudaly,* all *supra,* in well reasoned opinions have held that the holder of equitable title to land may describe himself as the "owner" of land without liability to criminal prosecution for "false pretenses." No case to the contrary has been cited, nor have we found one.

The evidence was not legally sufficient to convict.

### Evidence of Prior Conviction

We have examined the record with respect to this facet of the appeal and find no merit in the contention. The record shows that the ruling of the trial judge was favorable to the accused.

### Retrial

In sum, the appellant's testimony had been that he had made bona fide efforts to acquire legal title to the tract of land but that such acquisition was rendered impossible by (a) refusal of the vendor to convey, or (b) by cloud upon title stemming from unreleased mortgages. It may be that the State is able to offer evidence to rebut that testimony. We are unable to determine from this record whether or not additional probative evidence can be produced on retrial tending to show that appellant made a false representation of a past or existing fact. Under these circumstances we shall vacate the judgment and remand the case with directions to the trial court: (a) to hold a new trial if the State, within such time as may be fixed by the trial court, can satisfy it that additional probative evidence can be produced, or (b) to enter a judgment of acquittal if the State is unable preliminarily so to satisfy the court. *Gray v. State,* 254 Md. 385, 255 A. 2d 5.

> *Judgment vacated and case remanded for further proceedings not inconsistent with this opinion.*
>
> *Costs to be paid by Queen Anne's County.*