THE BEREN CORPORATION, APPELLEE, v. WILLIAM E.
SPADER ET AL., APPELLANTS, IMPLEADED WITH OBED
U. WALKER ET AL., APPELLEES.

255 N. W. 2d 247

Filed June 22, 1977.   No. 40854.

Pierson, Pierson & Fitchett, for appellants.

Fred T. Hanson of Hanson & Hanson, for appellee Beren Corp.

Obed U. Walker, pro se.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

This is an appeal from a District Court decision overruling a motion to vacate a default judgment which quieted title to certain real estate in Hitchcock County. We reverse and remand for further proceedings.

This case involves a somewhat complicated factual situation involving several transactions for the sale of real estate. In summary, the pertinent facts, on which the parties agree, are as follows. On December 4, 1968, William E. and Koila R. Spader, the defendants and appellants herein, executed an agreement for the purchase and sale of real estate with Paul and Louise Miller. The Millers agreed to sell to the Spaders real estate in Hitchcock County described as the "North Half (N½), the Southeast Quarter (SE¼), and the East Half of the Southwest Quarter (E½SW¼), all in Section Fourteen (14), and the North Half of the Northeast Quarter (N½ NE¼) of Section Twenty-three (23), all in Township Three (3) North, Range Thirty-four (34), West of the 6th P.M. in Hitchcock County, Nebraska." The con-

tract for sale was an installment contract, with a total purchase price of $64,000, and specifically included the oil, gas, and mineral rights. The following escrow provision was included in the contract: "The Sellers will deposit in escrow at the First National Bank of McCook, Nebraska a good and sufficient Warranty Deed to the premises being purchased by the Buyers, the grantee's names to be left blank and inserted by the Bank upon delivery, together with a good and sufficient abstract of title showing merchantable title of record in the premises being bought by the Buyers. The deposit shall be made on or before December 31, 1968. The said First National Bank, as escrow agent, shall retain the warranty deed and the said abstract until the full amount of the purchase price is fully paid at which time the said escrow agent will deliver the deed and abstract to the Buyers or their assigns. The escrow costs shall be shared one-half by the Sellers and one-half by the Buyers."

On October 5, 1970, the Spaders executed an assignment of the real estate in question, agreeing to "sell, assign, set over and transfer absolutely" to Obed and Lola Walker "all of our right, title and interest" in the real estate, subject to the provisions of the land contract between the Millers and the Spaders. The assignment, however, provided that the Spaders "shall retain an (sic) one-half interest in and to the oil, gas and minerals (sic) rights to the above described property for a period of ten years after which period all oil, gas and mineral rights shall revert back to the land."

On October 14, 1970, 9 days subsequent to the assignment by the Spaders to the Walkers, the Millers and the Walkers executed an agreement for the sale and purchase of the real estate. This contract, like the original contract between the Millers and the Spaders, provided for installment payments to be made to an escrow agent, a bank. The Millers

agreed that they would furnish to the Walkers "an abstract of title showing said premises to be free and clear of all encumbrance whatsoever, and shall deliver to the First National Bank of McCook, McCook, Nebraska, to be held in escrow, a warranty deed running to" the Walkers. The bank, as escrow agent, was authorized to deliver a warranty deed to the Walkers upon their payment of the full contract price, which was $47,700. The contract between the Millers and the Walkers did not refer to any retention of a one-half interest of gas, oil, and mineral rights in the land by the Spaders. In 1971, the Millers and the Walkers deeded a small portion of the land in question to the Johnny Walker Boys' Ranch, Inc.

A survivorship warranty deed, dated October 17, 1973, in which the Millers conveyed the land in question to the Walkers, without encumbrance and with no reservations, was filed with the register of deeds in Hitchcock County on October 19, 1973. On May 25, 1974, the Walkers granted an oil and gas lease to the Beren Corporation (Beren), the plaintiff and appellee herein. The lease was granted to Beren for the purpose of mining for oil and gas, and for activities relating thereto. The lease was for a 5-year period, and included portions of Section 14, 23, 24, 25, and 26, Township 3 North, Range 34 West of the 6th P.M., Hitchcock County. Included in the land leased to Beren were the portions of Sections 14 and 23 which the Spaders had contracted to buy from the Millers, and to which the Walkers had taken title under the deed from the Millers after the Spaders assigned their interest in that land to the Walkers. The lease made no reference to any gas, oil, and mineral rights which may have been retained by the Spaders under their assignment to the Walkers. On July 10, 1974, the Johnny Walker Boys' Ranch, Inc., ratified the oil and gas lease between the Walkers and Beren in order to grant Beren rights as a lessee in regard

to the land which had been deeded to the ranch in 1971.

On December 1, 1975, Beren brought a quiet title action against the Spaders, the Walkers, and the Johnny Walker Boys' Ranch, Inc. Beren's petition alleged the facts already described above, and attached thereto were the relevant contract documents and the oil and gas lease. It alleged, however, in reference to the original agreement of sale between the Millers and Spaders, that no deed was prepared or deposited in escrow in accordance with that contract. The petition acknowledged that the Spaders had attempted to retain a one-half interest in the oil, gas, and mineral rights in the real estate under their assignment to the Walkers, but alleged "that said provision was made notwithstanding that the title to the oil, gas and minerals under said land had not vested in the defendants, William E. Spader and Koila R. Spader, and by reason of said assignment never would so vest; that such provision was void as an attempt to create an interest in real estate by means of a reservation in favor of persons without title thereto." The petition further alleged that the Spader/Walker assignment became merged into the agreement of sale of the real estate between the Millers and the Walkers and the deed issued as a result of that agreement; and that the assignment therefore became void and of no effect. Beren alleged that the "pretended reservation" of rights in the Spader/Walker assignment cast a cloud upon the title Beren had in the land; and prayed that title be quieted against the pretended reservation, and that any claim of the Spaders be declared to be junior and inferior to the rights of Beren under its lease.

A summons was served on the Spaders on December 6, 1975, which provided that unless the Spaders answered the petition on or before January 5, 1976, the allegations of the petition would be taken as true and judgment rendered accordingly. The Walkers

and Johnny Walker Boys' Ranch, Inc., both entered a voluntary appearance, but did not contest the allegations of the petition. The Spaders failed to answer within the prescribed time. The record is silent as to the reason for such failure, but in their brief they state that it was due to oversight in that they did not notify their attorney of the pending action. On January 7, 1976, 2 days after answer day, the District Court entered a default judgment in favor of Beren. The record is barren of any evidence that Beren gave the Spaders or their attorneys notice of its intention to take the default judgment.

The decree entered by the District Court provided that the purported reservation of gas, oil, and mineral rights by the Spaders was void and of no effect; and that title to the oil and gas lease should be quieted in Beren against all claims of the Spaders to the oil, gas, and minerals in and under the land. The court specifically found that the Walkers were the owners of all oil, gas and mineral rights in the land in question, except those rights which went with the land which had been deeded to the Johnny Walker Boys' Ranch, Inc.; and that the Spaders were not the owners of any part of the oil, gas, and mineral rights in the land, as no interest therein of any kind was vested in them, and therefore the purported reservation of such rights in the Spader/Walker assignment was void and of no effect.

When the Spaders discovered that a default judgment had been entered against them, they notified their attorney, who, on January 27, 1976, filed a motion to vacate the decree. On March 18, 1976, the Spaders offered copies of a proposed demurrer and answer to the petition in support of their motion. In their general demurrer they state that the Spaders "demur to the petition of the Plaintiff for the reason that it fails to state a cause of action." In their proposed answer the Spaders acknowledge the existence of all the contracts and deeds described above,

but deny the allegation in the petition that no deed was prepared or deposited in escrow as provided for in the 1968 agreement of sale between the Millers and Spaders. The proposed answer alleges that the Spaders had a vested interest in the real estate from which a reservation of a one-half interest in the oil, gas, and mineral rights could be made; and that the Spaders were owners of a one-half interest in such rights for a period of 10 years, commencing October 5, 1970, under the Spader/Walker assignment.

After submission of briefs and a hearing on the motion to vacate, the motion was overruled by the District Court on March 18, 1976. The Spaders moved for a new trial on March 25, 1976, which motion was overruled on April 28, 1976. The Spaders have now appealed to this court, contending that the District Court erred in overruling their motion to vacate the default judgment entered against them.

The appellants' assignment of error is that the "trial court erred in overruling appellant's motion to set aside the default judgment." The Spaders contend that in order to set aside a default judgment by motion in the same term in which it was entered, a defendant need only show by answer or other proof that a meritorious defense to the petition exists and that their proposed demurrer and proposed answer to the petition presented meritorious defenses. Beren contends that in order to set aside a default judgment it is incumbent on the defendant to show affirmatively by answer or other means that he can present a good defense on the merits; and that the Spaders have not done so in this case because the allegations in the petition and answer show that the Spaders never acquired legal title to the land in question, and any equitable interest held by the Spaders was lost by them due to merger when the deed running from the Millers to the Walkers was delivered to the Walkers. The Spaders argue that the doctrine of merger is not applicable in the case,

and that their retention of rights in the land by reservation in the assignment of their interest to the Walkers was lawful and binding, and not destroyed by subsequent deeds, contracts for sale, or leases involving the land.

The law in this jurisdiction in regard to vacation of a default judgment during the same term in which it is rendered is well settled. It has long been held that a District Court has the inherent power to vacate its own judgment any time during the term in which it is rendered, and it is the policy of the law to give a litigant full opportunity to present his contention in court. It is also the duty of the courts, however, to prevent abuse of process, unnecessary delays, and dilatory and frivolous proceedings. Beliveau v. Goodrich, 185 Neb. 98, 173 N. W. 2d 877 (1970). The matter of vacation of a default judgment rests in the sound discretion of the trial court, but this discretion is not an arbitrary one, and it must be exercised reasonably. Our cases have "universally held that where a judgment has been entered by default and a prompt application has been made at the same term to set it aside, with the tender of an answer or other proof disclosing a meritorious defense, the court should on reasonable terms sustain the motion and permit the cause to be heard upon the merits." Beliveau v. Goodrich, *supra*. See, also, Jones v. Nebraska Blue Cross Hospital Service Assn., 175 Neb. 101, 120 N. W. 2d 557 (1963); Urwin v. Dickerson, 185 Neb. 86, 173 N. W. 2d 874 (1970); Lacey v. Citizens Lumber & Supply Co., 124 Neb. 813, 248 N. W. 378 (1933). We have also stated that the courtesy which should prevail between opposing counsel ordinarily requires that counsel for one party should, before taking a default, give notice to counsel for the other side, or to the defendant if defendant has no counsel, of his intention so to do. Urwin v. Dickerson, *supra;* Lacey v. Citizens Lumber and Supply Co., *supra;* Barney v. Platte Valley Public

Power & Irr. Dist., 147 Neb. 375, 23 N. W. 2d 335 (1946).

In this case the default judgment was taken 2 days after answer day. Beren does not contest the fact that the Spaders promptly moved to vacate the default judgment once they discovered it had been entered, and that the Spaders were not given notice of Beren's intention to take a default judgment. There is no contention that the Spaders were using dilatory tactics, intentionally causing unnecessary delays, or abusing process. The primary issue remaining, therefore, and the one disputed by the parties, is whether the Spaders set forth a meritorious defense in their proposed answer.

It is clear that a party seeking to vacate a default judgment must tender an answer or other proof disclosing a meritorious defense. Beliveau v. Goodrich, *supra*. Where a proposed answer does not state a valid and recognized defense to the petition, or where the allegations of the answer show that there is no defense, the motion to vacate the default judgment should be overruled. Frazier, Inc. v. Alexander, 183 Neb. 451, 161 N. W. 2d 505 (1968). The requirement that the proposed answer set forth a meritorious defense, however, does not require that the defendant show he will ultimately prevail in the action, but only that the defendant show that he has a defense which is recognized by the law and is not frivolous. See, Beliveau v. Goodrich, *supra;* Jones v. Nebraska Blue Cross Hospital Service Assn., *supra;* Urwin v. Dickerson, *supra*.

In the proposed answer submitted by the Spaders in this case, they admit the allegations in the petition in regard to the existence of the contracts, assignment, and deeds previously described in this opinion. They deny the allegations that the Walkers or the Johnny Walker Boys' Ranch, Inc., acquired all the oil, gas, and mineral rights in the land in question by virtue of the deeds referred to in the pe-

tition. They deny the allegation that their contract with the Millers contemplated that title to the real estate might not at any time vest in them and that title to the property did not at any time so vest. The Spaders also deny that they have relinquished by contract or operation of law their interest in and to oil, gas, and mineral rights in the land. They allege in their proposed answer that the escrow deed referred to in their contract with the Millers was executed and delivered into escrow, and allege that they were vested with an interest in the real estate from which a reservation of one-half of the oil, gas, and mineral rights could be made. Finally, the Spaders allege that they are the present owners of a one-half interest in the oil, gas, and mineral rights to the property for a period of 10 years, which commenced on October 5, 1970, the date of their assignment to the Walkers.

Beren contends that the proposed answer alleges no facts which demonstrate a meritorious defense, and contains only allegations which are conclusions of law, and which are not sufficient to meet the requirement that a meritorious defense be shown before a default judgment is vacated. It is true that the allegations set forth in the proposed answer include conclusions of law in the sense that the Spaders allege that they are owners of a one-half interest in the gas, oil, and mineral rights in the land. It must be noted, however, that the Spaders are not contesting the existence of the contracts, assignment, and deeds on which Beren relies in asserting its claim. Instead, the Spaders' primary contention is that the relevant documents show that they are the owners of an interest in the land. The issue the Spaders raise in their proposed answer is primarily one of law. The Spaders are not in the position to allege facts establishing a defense because they claim that under the facts Beren alleged in its petition they are owners of an interest in the land.

A meritorious or substantial defense or cause means one which is worthy of judicial inquiry because it raises a question of law deserving some investigation and discussion or a real controversy as to the essential facts. 46 Am. Jur. 2d, Judgments, § 741, p. 903; 49 C. J. S., Judgments, § 336(c), pp. 646 to 648; Naughton v. First Nat. Bank of Boston, 356 N. E. 2d 1224 (Mass. App., 1976); Lovell v. Lovell, 276 Mass. 10, 176 N. E. 210 (1931). Thus, where a proposed answer raises a question of law deserving argument and investigation, and one which is not frivolous, it sets forth the meritorious defense which must be shown in support of an application to open or vacate a default judgment. Spaders' allegation that they own an interest in the land under the relevant documents attached to the pleadings clearly raises a question of law. To counter this, Beren argues that it is not a question of law sufficient to support vacation of the default judgment because reference to the proposed answer and the relevant documents shows that Spaders' claim is unfounded. In examining these contentions, it is necessary that we refer to applicable law on conveyancing, vested property rights, and retention of interests by a grantor or assignor. Our inquiry, however, is limited to the question of whether the proposed answer sets forth a meritorious defense, and we do not determine the merits of the case, as the only question presented on appeal is whether the trial court erred in overruling the motion to vacate the default judgment.

We first note that a lessee of real estate or of gas, oil, and mineral rights may maintain an action to quiet title to his leasehold. Peterson v. Vak, 160 Neb. 450, 70 N. W. 2d 436, modified on rehearing, 160 Neb. 708, 71 N. W. 2d 186 (1955); 38 Am. Jur. 2d, Gas and Oil, § 289, p. 752; Annotation, 51 A. L. R. 2d 1227, § 3, at p. 1229. A lessee, however, takes his leasehold subject to all claims of title which are enforce-

able against his lessor, as a lessor cannot create any greater interest in the lessee than he himself has. 49 Am. Jur. 2d, Landlord and Tenant, § 13, p. 56. See, also, Gregory v. Pribbeno, 143 Neb. 379, 9 N. W. 2d 485 (1943); Guthmann v. Vallery, 51 Neb. 824, 71 N. W. 734 (1897). It is also the rule that a plaintiff in a quiet title action is required to recover on the strength of his own title, and not upon the weakness of his adversary's title. Lunzmann v. Yost, 182 Neb. 101, 153 N. W. 2d 294 (1967). Therefore in this case Beren's claim, as lessee of the Walkers, is only as good as the Walkers' claim to ownership of the gas, oil, and mineral rights in the land. Beren must rely on the strength of the Walkers' title to the land, and not upon the weakness of the Spaders' title. Beren does not contest this fact on appeal, as it relies on its claim that the Walkers took full title to the land in question under the contract and deed executed with the Millers.

With these principles in mind, we turn to Beren's contentions that no serious question of law is raised by the proposed answer. First, it is contended that an interest in the land never vested in the Spaders. A review of pertinent provisions of the Uniform Property Act, sections 76-101 to 76-123, R. R. S. 1943, is relevant at this point. Section 76-101, R. R. S. 1943, provides that the "term property means one or more interests either legal or equitable, possessory or nonpossessory, present or future, in land, or in things other than land, * * *." That section also provides that "the term conveyance means an act by which it is intended to create one or more property interests, * * *." Section 76-106, R. R. S. 1943, provides that an "otherwise effective reservation of property by the conveyor reserves the interest the conveyor had prior to the conveyance unless an intent to reserve a different interest is effectively manifested." Section 76-203, R. R. S. 1943, defines "deed" to "embrace every instrument in writing by

which any real estate or interest therein is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity * * *.'' Under the Uniform Property Act, a person holding an equitable interest in property may convey his interest, and also make a reservation therein; and an instrument in writing by which the interest is assigned is considered to be a deed.

We next note that upon the execution of a contract for the sale of real estate, the equitable ownership of the property vests in the vendee, even though the seller retains the legal title as security for deferred installment payments of the purchase price. In Buford v. Dahlke, 158 Neb. 39, 62 N. W. 2d 252 (1954), this court stated: "It has been frequently and consistently decided by this court, as it is quite unanimously agreed by courts generally, that if the owner of real estate enters into a contract of sale whereby the purchaser agrees to buy and the owner agrees to sell it and the vendor retains the legal title until the purchase money or some part of it is paid, the ownership of the real estate as such passes to and vests in the purchaser, and that from the date of the contract the vendor holds the legal title as security for a debt as trustee for the purchaser." Under a land contract, the vendee is the equitable owner of the real estate. Graf v. State, 118 Neb. 485, 225 N. W. 466 (1929). The fact that the equitable ownership of property can be in one person and the legal title in another is beyond question. DeForge v. Patrick, 162 Neb. 568, 76 N. W. 2d 733 (1956). The law in Nebraska on these issues is in accordance with that in other jurisdictions. See, Burroughs v. State, 21 Md. App. 648, 320 A. 2d 587 (1974); General Electric Co. v. Levine, 50 Mich. App. 733, 213 N. W. 2d 811 (1973); Eager v. Berke, 11 Ill. 2d 50, 142 N. E. 2d 36 (1957). It is also the rule that where a land contract has an escrow provision providing that the deed will be held in escrow until payment of the pur-

chase price, the grantor of an instrument held in escrow loses control over it so long as the grantee does not default, even though he retains bare legal title in the land as security for payment of the purchase price. Pike v. Triska, 165 Neb. 104, 84 N. W. 2d 311 (1957).

The vendee under a land contract, having obtained a vested equitable interest in the real estate upon executing the contract, may generally assign his interest to a third party. 77. Am. Jur. 2d, Vendor and Purchaser, § 387, p. 533. The effect of such an assignment is to convey the vendee's equitable interest to the assignee. 77 Am. Jur. 2d, Vendor and Purchaser, § 390, p. 534; Burroughs v. State, *supra*. The assignment creates a privity of estate between the assignee and original vendor, but not a privity of contract between them, as the assignee's only contract is with the vendee. General Electric Co. v. Levine, *supra;* 92 C. J. S., Vendor & Purchaser, § 311 (b), p. 194. The vendee may make a partial assignment of his interest rather than assign his entire interest. III American Law of Property, § 11.39, p. 109.

The authorities cited above indicate that the vendee under a land contract has a vested equitable interest in the real estate, one which he may assign in whole or part. Therefore, contrary to Beren's contention, the allegation in the proposed answer that the Spaders had a vested interest in the land which they could assign, reserving a part thereof, raised a question of law deserving investigation, and therefore one which establishes a meritorious defense under the principles previously set forth in this opinion.

Beren's next claim is that the Spaders lost whatever interest they had in the land because they never obtained a deed from the Millers, and that without holding such deed the Spaders could not effectively retain an interest in the land. Beren con-

tends that in order to retain an interest in the land, the Spaders had to obtain a deed from the Millers, and then grant a deed to the Walkers, reserving the desired one-half interest in the gas, oil, and mineral rights. Although there is no prior Nebraska case deciding the question, a recent Colorado case is on point and persuasive.

In Brian v. Valley View Cattle Ranch, Inc., 35 Colo. App. 428, 535 P. 2d 237 (1975), facts similar to those in this case were present. The Wrockloffs were the fee simple owners of two tracts of land. In 1947 they entered into a purchase contract with one Brian for sale of the land. The Wrockloffs reserved a one-half interest in the mineral rights in the land under the contract. In 1952, Brian contracted to sell the land to Sullivan, and reserved a three-fourths interest in the mineral rights. Brian was reserving a one-half interest for the benefit of the Wrockloffs, and a one-fourth interest for himself. At this point in time, the Wrockloffs had not yet delivered a deed to Brian. In a subsequent quiet title action, it was established that the Wrockloffs still retained legal title to the land subject to the Brian/Sullivan contract.

In 1960, Sullivan contracted to sell part of the land to Valley View, including all mineral rights belonging to Sullivan. In 1960, Sullivan, upon payment in full by him to the Wrockloffs, received a deed from the Wrockloffs. The deed from the Wrockloffs reserved an undivided one-half interest in the mineral rights to the land, but was silent as to the one-fourth interest retained by Brian under the Brian/Sullivan contract. Sullivan then conveyed part of the land to Valley View, subject to all prior reservations of mineral rights. The successors in interest to Brian subsequently commenced a quiet title action against Valley View, asserting that they owned a one-quarter interest in the mineral rights in the land held by Valley View.

The court held that upon payment in full by Sullivan to the Wrockloffs pursuant to the terms of the 1947 contract, equitable fee title to the one-quarter mineral interest vested in Brian. The court found that the Wrockloffs held the legal title to the land in trust solely for the purpose of conveying the same to Brian. Thus it was held that Brian effectively retained an interest in mineral rights in the land under his contract with Sullivan, even though Brian himself never received a deed from the Wrockloffs, and even though the Wrockloffs gave the deed directly to Sullivan, reserving only a one-half interest in mineral rights for themselves.

The facts in Brian, although differing in some respects, are very analogous to those in the present case. Brian supports the Spaders' claim that they effectively reserved an equitable interest in the gas, oil, and mineral rights in the land pursuant to their assignment to the Walkers. Therefore a question of law has been raised by the proposed answer, and Beren's contention that the answer and the relevant documents attached to the pleadings show that the Spaders unquestionably have no interest in the land is without merit. Whether the Spaders in fact have an interest in the gas, oil, and mineral rights in the land must be determined after all relevant facts are ascertained.

The final legal argument Beren raises is that the petition and proposed answer show that the Spaders lost their interest in the land when the deed from the Millers was delivered to the Walkers. Beren contends that all agreements made prior to the deed became merged therein, and that since the deed contained no reservation in favor of Spaders, the Spaders lost their interest in the land. It is true that "for most purposes when a deed is made in execution of a contract of sale, the provisions of the contract are merged in the deed." Weiner v. Hroch, 188 Neb. 389, 196 N. W. 2d 907 (1972). In Ingraham v. Hunt,

159 Neb. 725, 68 N. W. 2d 344 (1955), it is stated: "Generally, upon the execution, delivery, and acceptance of an unambiguous deed, such being the final acts of the parties expressing the terms of their agreement with reference to the subject matter, all prior negotiations and agreements are deemed merged therein, in the absence of a preponderance of evidence clear and convincing in character establishing some recognized exception such as fraud or mistake of fact, and the deed will be held to truly express the intentions of the parties." See, also, Hoke v. Welsh, 162 Neb. 831, 77 N. W. 2d 659 (1956). The doctrine of merger, however, was applied in those cases only in situations where the parties to the land contract and the parties to the deed were the same. It does not apply in regard to persons who have no privity of contract. See Nebraska Wesleyan University v. Smith, 113 Neb. 208, 202 N. W. 2d 625 (1925). Whether or not the doctrine of merger is applicable in this case can only be determined on remand after all pertinent facts are adduced.

In the present case, the deed ran from the Millers to the Walkers, and the assignment ran from the Spaders to the Walkers. There is no allegation or indication in the record that the Spaders were a party to the Miller/Walker contract, or took part in the execution of the deed running from the Millers to the Walkers. We reject the contention that the proposed answer shows that the doctrine of merger applies in this case, and that the defense of the Spaders is not meritorious.

As stated previously, the allegation in the proposed answer that the Spaders own an interest in the land in question raises a question of law worthy of investigation, and is therefore one which sets forth a meritorious defense. We have thoroughly examined Beren's contentions that the proposed answer itself shows that the Spaders could not have the interest they claim. We find these contentions unpersuasive,

and believe that the Spaders should be given a full opportunity to present their arguments in the District Court. We note that in this equity case, were the default judgment allowed to stand, the Spaders would not only have rights inferior to those of Beren, but would also be precluded from pursuing any claim they may have against the Walkers, who obtained the land via the assignment from the Spaders, and who agreed that the Spaders should retain a one-half interest in the gas, oil, and mineral rights. This is so because the default decree entered by the trial court not only granted Beren relief, but also provided that the Spaders had never acquired the interest they claim, and that the Walkers and the Johnny Walker Boys' Ranch, Inc., had full title to the land. The Spaders were not charged with dilatory tactics in this case. They promptly moved to set aside the default decree, and have tendered a meritorious defense in their proposed answer, the same being a question of law worthy of investigation. Under such circumstances, the default judgment should have been vacated. See Beliveau v. Goodrich, *supra*.

We emphasize that the discussion of law herein does not decide the merits of the case. On remand, disputed questions of fact, as well as questions of law, may need to be resolved. The trial court will have to reach conclusions as to the ownership of the oil, gas, and mineral rights in question in light of the facts presented by the parties. We reverse the judgment and remand the cause for further proceedings, conditioned upon defendants Spaders paying all costs of this appeal.

REVERSED AND REMANDED.

CLINTON, J., concurring in the result only.

I concur in the result only. I cannot join in the opinion as a whole because of what appears to me to be undue speculation as to the ultimate outcome and the legal principles applicable. The only question in

this case is whether the default judgment should be set aside so as to give the defendants Spaders an opportunity to present their case on the merits. There are factual issues to be resolved and it would appear that the legal principles to be applied will be of first impression in this state. The pleadings on which the trial judge acted in denying the application to set aside the default judgment raise disputed questions of fact, and the outcome of the case depends upon the resolution of the fact issues and the determination of what principles of law are to be applied. Only a *possibly* meritorious defense is pleaded.

It is undisputed in the pleadings that when the plaintiff Beren Corporation took the oil and gas lease from the Walkers, it did so from persons who were then holders of 100 percent of the record legal title to the oil and gas interests underlying the land in question. At that time, however, there was of record the contract from Millers to Spaders for sale of the land which contained no exceptions or reservations of oil and gas interests. A deed from the Millers containing no exceptions of a one-half interest in the oil and gas underlying the land was in escrow. In that deed the grantee was undesignated. Spaders assigned the contract to Walkers and in the assignment there was a provision that Spaders would retain "one-half interest in and to the oil and gas," et cetera. When the transaction was completed the deed in escrow went directly from Millers to Walkers. We do not know exactly why the transaction was completed in this fashion rather than by the insertion of Spaders' name in the deed in escrow and then having the Spaders make a deed to Walkers containing an appropriate exception of one-half of the oil and gas rights. The pleadings raise a factual question as to whether or not it was ever intended that Spaders ever become the owner of any interest in the premises, including oil and gas.

The questions which seem to be raised and which

need resolutions, both factual and legal, are these: (1) What factual reason existed for completing the transaction directly from Millers to Walkers — was this done with the knowledge and acquiescence of Spaders? (2) Was the Beren Corporation entitled to rely on the doctrine of merger when it took the oil and gas lease from the persons who were then the record holders of the legal title to all the oil and gas interests underlying the land in question? The doctrine of merger, of course, is applicable in Nebraska. Ingraham v. Hunt, 159 Neb. 725, 68 N. W. 2d 344; Hoke v. Welsh, 162 Neb. 831, 77 N. W. 2d 659; Weiner v. Hroch, 188 Neb. 389, 196 N. W. 2d 907. (3) Ought Spaders, so far as the Beren Corporation is concerned, be treated as a stranger to the title for the purpose of the application of the doctrine of merger? An exception in a conveyance cannot under the general rule be made in favor of a stranger to the conveyance. Bauer v. Bauer, 180 Neb. 177, 141 N. W. 2d 837; 6 Thompson on Real Property, § 3091, note 84, p. 787. (4) If the purported reservation in the assignment is to be given effect, ought it only to be as between Spaders and Walkers, but subject to the Beren Corporation's oil and gas lease?

So far as my researches have disclosed, the questions here presented have never been answered in this state. The Colorado case which is heavily stressed in the majority opinion may not be applicable because in that case there was no intervening oil and gas lease taken from the record title holder.