LINCOLN WELDING SUPPLY CO., APPELLEE, v.
INHALATION PLASTICS, INC., APPELLANT.

331 N.W.2d 804

Filed April 1, 1983. No. 82-080.

Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Rollin R. Bailey of Bailey, Polsky, Cada & Todd, for appellee.

BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

Inhalation Plastics, Inc., defendant-appellant, appeals from a default judgment entered in favor of plaintiff-appellee, Lincoln Welding Supply Co., in the sum of $27,774 on October 7, 1981.

Inhalation Plastics urges that the trial court erred in entering the default judgment and abused its discretion in refusing to set it aside. We cannot agree, and affirm the judgment of the trial court.

Lincoln Welding is a Lincoln, Nebraska, business which, among other things, supplied medical gases and associated equipment to hospitals for use in respiratory or inhalation therapy. Inhalation Plastics is an Illinois corporation with its principal place of business in Chicago. At the relevant time it engaged in the manufacture and sale of various medical and hospital products, including an oxygen humidifier known as Ster-$O_2$-Mist. This lawsuit for damages originated in connection with the purchase by Lincoln Welding from Inhalation Plastics of the Ster-$O_2$-Mist. The suit was initiated sometime in October of 1977; the briefs of the parties disagree as to the date of filing and the clerk's date stamp on the transcript copy of the original petition is not readable.

The first pleading on behalf of Inhalation Plastics contained in the transcript is a motion for enlargement of its time within which to answer certain discovery requests. That pleading was filed by a member of the Nebraska bar who was granted leave to withdraw from his representation of Inhalation Plastics on March 20, 1981. Although there are a number of references in various notices and pleadings to a Chicago, Illinois, law firm as representing Inhalation Plastics, after the withdrawal of Nebraska counsel, no pleadings bearing any Illinois attorney's signature were filed until after the default judgment had been entered. The record reveals a history of delays by Inhalation Plastics in responding to Lincoln Welding's various and numerous discovery re-

quests and a variety of efforts on the part of Lincoln Welding to secure compliance with the court's numerous orders relating thereto. The record reveals as well that the plaintiff amended its documents a number of times. This matter was finally resolved on the basis of a third amended petition filed on March 20, 1981.

The relevant history includes an order directing the defendant to answer certain interrogatories on or before May 1, 1981, or "default judgment to be entered." Although the record before us does not show what service, if any, was made of that order, a subsequent order was entered on May 11, 1981, directing Inhalation Plastics to show cause on June 15, 1981, why default judgment should not be entered against it. In accordance with the trial court's directions, a copy of that order was served by certified mail upon Inhalation Plastics' president and upon the Chicago law firm previously mentioned. Inhalation Plastics did not appear as ordered; whereupon the trial court found it to be liable to Lincoln Welding. A hearing was scheduled for June 30, 1981, to determine the amount of that liability. Again, as directed by the trial court, a copy of the order finding liability and scheduling the further hearing was served by certified mail upon Inhalation Plastics' president and upon the Chicago law firm discussed above. Inhalation Plastics again failed to appear at the scheduled time on June 30, 1981. An evidentiary hearing was conducted at that time, which included the testimony of an associate professor of finance with experience in projecting business earnings; he testified concerning Lincoln Welding's losses as a consequence of the breach of its warranties by Inhalation Plastics. The evidence, if believed by the trier of fact, supports a finding that Lincoln Welding suffered losses in the amount of the default judgment.

Inhalation Plastics filed a motion on December 11, 1981, to vacate and set aside the judgment. At the

hearing thereon the trial court received a number of affidavits offered by Inhalation Plastics which purport to establish that its Chicago attorney misrepresented the facts as to the conduct, status, and progress of the case and had assured it that its interests were being protected. The Chicago attorney's affidavit also recites that his conduct was caused by severe mental problems, which he sought to overcome through psychiatric care. One of Inhalation Plastics' affidavits contains assertions which tend to establish that Inhalation Plastics had a meritorious defense to Lincoln Welding's action. Lincoln Welding points out, however, that there is a lack of evidence to establish that Chicago counsel was incapable either mentally or physically to carry out the legal matters involved in this case and that he appears to have continued to practice law throughout the period of time involved.

*Vacca v. DeJardine, ante* p. 736, 331 N.W.2d 516 (1983), contains the most recent restatement of the rule that the vacating of a default judgment rests in the sound discretion of the trial court, but such discretion is not an arbitrary one and must be exercised reasonably. We held therein that it was an abuse of discretion to grant a default judgment in the absence of a prior order to show cause why such should not be done because of the failure to serve answers to certain discovery requests. We also held it was an abuse of discretion to set aside a default judgment where no answer had ever been filed, because a party seeking to vacate a default judgment must tender an answer or other proof disclosing a meritorious defense.

A determination of whether there has been an abuse of discretion by the trial court in failing to set aside a default judgment must of course be made in light of the facts and circumstances of each case. The facts of this case are not the facts of *Vacca, supra.* Although there was a showing of a meritorious defense in the instant matter, the entry of the

default judgments had each been preceded by an order to show cause why such should not be done. Those orders were ignored by Inhalation Plastics.

In *Michaelis v. Michaelis,* 187 Neb. 350, 190 N.W.2d 783 (1971), it was said that among the factors to be considered in determining whether there has been an abuse of discretion in refusing to set aside a default judgment are those of the promptness of the motion to vacate, the negligence or want of diligence of the party moving to vacate, and the avoidance of unnecessary delays and frivolous proceedings in the administration of justice. In light of those factors it cannot be said there was any abuse of discretion by the trial court's refusal to set aside the default judgment in this case. The defendant waited fully 2 months and 4 days before moving to vacate the damage default judgment. Further, nearly 6 months elapsed between the finding of liability and the filing of the motion to vacate.

Inhalation Plastics seeks to hide behind the conduct of its Chicago attorney. The record, however, allows a clear inference that Inhalation Plastics, through its president, either knew or should have known that something was sorely amiss in the conduct of this case.

Inhalation Plastics cites a number of cases in which this court reversed a denial of a motion to vacate a default judgment. However, those cases are readily distinguishable on the facts from the instant situation. *Lacey v. Citizens Lumber & Supply Co.,* 124 Neb. 813, 248 N.W. 378 (1933), presented a situation wherein the defendants had no knowledge of the default proceedings. In *Beren Corp. v. Spader,* 198 Neb. 677, 255 N.W.2d 247 (1977), neither the defendants nor their attorneys were aware of the plaintiff's intention to take a default judgment. In *Coates v. O'Connor,* 102 Neb. 602, 168 N.W. 102 (1918), the opinion notes that some allegations in the petition of the plaintiff were indisputably false, the debt on which judgment was had was in fact not owed by the

defendant therein, and, further, the plaintiff had traveled to a foreign jurisdiction so as to surreptitiously attach and sell the property of the defendant without his knowledge. Those are not the facts of the present case. *Beem v. Davis,* 111 Neb. 96, 195 N.W. 948 (1923), appears at first blush to be similar to the case presently before us, as the defendants against whom a default judgment had been taken, and which was subsequently reopened, had been relying entirely on the assurances of their attorney that the matter was being taken care of. However, in *Beem,* unlike the situation here, defendants had no personal knowledge to the contrary. In *Beliveau v. Goodrich,* 185 Neb. 98, 173 N.W.2d 877 (1970), there was some confusion as to what the parties had told each other they would do concerning the taking of a default judgment; that is, the default judgment seems to have been one element of negotiations carried on between the parties as to how the liability suit would be resolved. Such was not the case here. In *Barney v. Platte Valley Public Power and Irrigation District,* 147 Neb. 375, 23 N.W.2d 335 (1946), this court indicates that not all of the appropriate corporate officials were aware of the pendency of the suit, nor was counsel for the corporate entity aware of opposing counsel's intention to take a default judgment. Again, such is not the case in the instant matter. Finally, in the last case cited by Inhalation Plastics, *Anthony & Co. v. Karbach,* 64 Neb. 509, 90 N.W. 243 (1902), the parties against whom default judgment was taken were misled by the attorney, and therefore, on first reading, the case appears remarkably similar to the one at hand. This court, in affirming the setting aside of the default judgment therein, stated that one who has suffered by the dishonesty of his attorney, an officer of the court, is the victim of casualty and misfortune such as will justify the setting aside of a default judgment. However, in *Anthony* the attorney was a member of the Nebraska bar, upon whom the injured parties could

rightfully rely to represent them in the Nebraska courts. More importantly, *Anthony* is another case in which there was no showing that the injured parties themselves either knew or should have known of the status of the case.

Inhalation Plastics could not reasonably have ignored the default notices sent to its president, and should not have done so. It should have, particularly after more than one such occurrence, and particularly when the notices indicated events of such major severity were about to occur, taken some independent and meaningful steps to insure itself that its interests were in fact actually being adequately protected.

The actions of the trial court were entirely correct and, accordingly, are affirmed.

AFFIRMED.