PEARL WAGNER, APPELLEE, V. LOUP RIVER PUBLIC POWER
DISTRICT, A CORPORATION, APPELLANT.

33 N. W. 2d 300

Filed July 7, 1948. No. 32372.

*Walter & Flory* and *Neighbors & Danielson,* for
appellant.

*Walker, Luckey & Hunter* and *Milton Wagner,* for
appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-
MORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an action to recover damages to riparian lands
for injuries resulting from the diversion of water from
the Loup River. The jury returned a verdict for the
defendant. The trial court set the verdict aside on the
ground of newly discovered evidence. From the order
setting the verdict aside, the defendant has appealed.

Plaintiff's cause of action is based on article 1, sec-
tion 21, of the Nebraska Constitution, which provides in
substance that the property of no person shall be taken
or damaged for public use without just compensation
therefor. Proof of negligence or the commission of a

wrongful act is not, therefore, necessary to a recovery. It is the contention of the plaintiff that the lands involved were subirrigated from the Loup River which flows along the north boundary thereof, until the acts of defendant occurred, of which complaint is made. It is claimed that the diversion of water by the defendant for power purposes about 35 miles upstream from plaintiff's land changed existing conditions to the damage of plaintiff in the following respects: Prior to the diversion, the quantity and velocity of the water were such that it kept the south bank of the river free from silt, and thereby prevented a sealing of its banks and permitted the water of the stream to flow into plaintiff's land below the surface of the ground, thereby bringing about a subirrigation of said lands. Due to the diversion of the water by the defendant the height of the stream has been lowered to such an extent that the water, since 1940, flows into plaintiff's land at such a level as to destroy the benefits previously received by a subirrigation of the lands. It is also urged that the defendant removes all sand, silt, and sediment from the water diverted from the stream and discharges clear water into the stream below plaintiff's land. It is contended that this clear water immediately picks up a new load of sand, silt and sediment, causing a deepening of the bed of the stream. It is further contended that this deepening process brings about a deepening of the channel upstream and causes a lowering of the bed of the stream along the north bank of plaintiff's land, resulting in a lowering of the water level of the underground waters beneath plaintiff's lands from two and one-half to three feet. This is alleged to have materially reduced or destroyed the subirrigation of said lands.

In addition to special defenses the defendant denies generally the contentions alleged by the plaintiff.

The record shows that evidence was produced by both parties on the issues thus raised. That the evi-

dence was sufficient, if believed, to sustain the verdict of the jury is amply shown by the record. The application for a new trial is grounded primarily on the alleged discovery of new evidence. The correctness of the ruling of the trial court is properly raised by direct appeal under the provisions of section 25-1315.03, R. S. Supp., 1947. Cozad v. McKeone, 149 Neb. 833, 32 N. W. 2d 760.

The evidence offered by the plaintiff shows that for many years prior to 1940 the land was subirrigated; that the ground-water level remained uniform during the summer months, irrespective of varying amounts of precipitation, with the result that great productivity was maintained by the subirrigation of the land. Plaintiff also produced evidence to the effect that after 1940 the water level of the Loup River dropped approximately two and one-half feet, that ponds and sloughs dried up, and that productivity was materially decreased in the years when rainfall was inadequate. If this evidence had been accepted by the jury and a verdict returned thereon, it would have been ample to sustain an award for damages.

There was evidence offered by the defendant which was in direct conflict with that of plaintiff's witnesses. It is true that plaintiff claims that most of these witnesses were impeached and their credibility impugned. These are matters which are traditionally for the jury to determine. The conflict in the evidence which is primarily involved in the motion for a new trial on the ground of newly discovered evidence arises out of the testimony of the expert witnesses. The plaintiff called Roy N. Towl and the defendant called Adolph Meyer as expert witnesses, both being shown by the record to be qualified to testify concerning the engineering problems involved in the case. The motion for a new trial involves the evidence of Meyer, and consequently we shall review briefly the testimony which he gave.

The witness Meyer testified that he had made a study

of the annual precipitation in this area over a long period of years and the run-off waters and ground-water levels resulting therefrom. He made a study of the natural flow of the Loup River, the amount diverted by the defendant, and the result produced. He investigated the well recordings in the area, including those on the plaintiff's lands, for the purpose of determining ground-water fluctuations and their causes. He examined river gauging records to determine the height of the water in the stream over a period of years and to determine if the river bed was lower after 1940 as alleged by the plaintiff. From these investigations and findings, the basis of which was before the jury in great detail, the witness testified that the river bed had remained at substantially the same height throughout the years, that any changes in the height of the stream itself was due to variance in the amount of precipitation, and that there was no lowering of the ground water on the Wagner land resulting from water diversions made by the defendant. The foregoing evidence was in conflict with that given by plaintiff's expert, Towl. The weight of the evidence and the credibility of the witnesses were for the jury. Evidently the jury gave credence to the testimony of Meyer.

In the course of his evidence the witness Meyer testified that the readings and conditions relating to 1944 and 1945 showed improving water levels in plaintiff's lands which, in his opinion, would continue with good rainfall. The affidavits and testimony produced in support of the motion for a new trial tend to show that more than one year after the trial no such improvement had come about. The plaintiff argued that this evidence which became existent subsequent to the trial shows that Meyer's opinion was in error and that Towl's opinion, in the light of subsequent events, appears to have been the correct one. We do not believe that such evidence affords a basis for a new trial.

The statutory provision governing new trial is in part

as follows: "The former verdict, report or decision shall be vacated and a new trial granted on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party; * * * (7) newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial; * * *." § 25-1142, R. S. 1943. Newly discovered evidence within the purview of this provision of the statute is evidence in existence at the time of the trial, but which could not, by reasonable diligence, have been procured. Cassidy v. Johnson, 41 Ind. App. 696, 84 N. E. 835. A new trial will not be granted on the ground of newly discovered evidence where it appears that such evidence was not available at the time of the trial, but rather the result of changed conditions since. Johnson v. City of Waterloo, 140 Ia. 670, 119 N. W. 70. In Johnson v. Johnson, 18 Colo. App. 493, 72 P. 604, the court said: "Admitting the allegations of the affidavit to be true, it cannot be made the basis of a motion for a new trial as, from the very nature of the case, such testimony could not have been produced at the trial, as the fact complained of did not exist at that time." See, also, Denny v. Broadway Nat. Bank, 118 Ga. 221, 44 S. E. 982; Geiman-Herthel Furniture Co. v. Geiman, 160 Kan. 368, 161 P. 2d 518; Hutt v. Young, 47 Ohio App. 390, 191 N. E. 879.

The authorities are not, however, in complete accord on the subject. See; State v. Watrous, 177 Minn. 25, 224 N. W. 257; Giles v. Robinson, 114 Me. 552, 96 A. 745. Many of the cases which appear to support the minority rule do not do so in fact. They are cases where it was shown by evidence occurring after the trial that the verdict was procured by perjury, fraud, or concealment on the part of the prevailing party. Rogers v. Goforth, 121 W. Va. 239, 2 S. E. 2d 903. No such contention is advanced in the present case. In State v. Watrous, *supra,* although adhering to the minority view, the court re-

fused to apply it in that case, saying: "What effect the jury gave to drainage in making up its verdict cannot be known. The granting of a new trial, if followed as a precedent, would result in further litigation of issues which should be deemed settled by the verdict. And in every case, where the evidence was by way of prediction or prophecy of the damages which would result and either party was dissatisfied, there could be a demand for a new trial. In any but a very extraordinary case the evidence at the trial must end the controversy."

Our holding that evidence of facts occurring after the trial does not ordinarily afford a basis for a new trial is grounded on sound policy, a policy that is intended to secure care and vigilance and prevent parties from coming forward subsequently with claims of new evidence which tend to prolong litigation unduly. A failure of justice in a particular instance is ofttimes not so great an evil as that there should be no certain end to litigation. In any but a very extraordinary case in which an utter failure of justice will unequivocally result, a verdict on the evidence at the trial will not be set aside and a new trial granted on the basis of evidence of facts occurring subsequent to such trial.

We are of the opinion that the majority view is the proper one and that evidence of facts happening after trial ordinarily cannot be considered as newly discovered evidence on which to justify the granting of a new trial. The evidence in the present case is not within the exception noted.

The plaintiff alleges misconduct of the jury and of the prevailing party, its officers, agents, representatives and employees, by which plaintiff was prevented from having a fair trial. It is charged in the motion for a new trial also that defendant's counsel and witnesses followed a deliberate and planned policy of injecting prejudicial argument, objections, comments, and remarks which deprived plaintiff of a fair and impartial trial on the material evidence. The affidavits and testimony pro-

duced in support of the motion for a new trial, when viewed in connection with similar evidence in opposition thereto, do not sustain these allegations, and the trial court so found.

The trial was fairly conducted. The verdict of the jury is sustained by sufficient evidence. The motion for a new trial on the ground of newly discovered evidence was improperly sustained because there was no newly discovered evidence within the meaning of section 25-1142, R. S. 1943. The allegations of misconduct on the part of the jury, defendant, witnesses, and counsel for defendant are not established. Under these circumstances the order of the district court granting a new trial is erroneous. While the trial court has great discretion in ruling upon a motion for a new trial, such discretion is a judicial one and where, as here, there is no newly discovered evidence within the meaning of section 25-1142, R. S. 1943, it is reversible error to grant a new trial on that ground. The order granting a new trial is therefore reversed with directions to vacate such order and to enter judgment for the defendant on the verdict rendered.

REVERSED.