JOHN P. SULLIVAN AND MILRAE SULLIVAN, HUSBAND AND WIFE, APPELLANTS, V.
ARTHUR C. HOFFMAN, APPELLEE.

296 N.W.2d 707

Filed September 12, 1980.   No. 42804.

E. Merle McDermott for appellants.

Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley for appellee.

Heard before BOSLAUGH, BRODKEY, and HASTINGS, JJ., and BUCKLEY and WINDRUM, District Judges.

BUCKLEY, District Judge.

This is an action between adjoining farmland owners in Hall County, Nebraska, wherein the plaintiffs, John P. Sullivan and Milrae Sullivan, seek to enjoin the defendant, Arthur C. Hoffman, from maintaining a

dike near the boundary of their adjoining property, which dike plaintiffs claim prevents the natural flow of water from running off plaintiffs' property and into a lagoon or pond on defendant's property.

The defendant cross-petitioned, contending that the plaintiffs, by leveling and diking their land, have diverted the natural flow of water from a basin on their own land onto defendant's land, and seeking an injunction against plaintiffs from any such further diversion. After trial, which included an inspection of the property by the trial judge, the District Court for Hall County, Nebraska, dismissed both plaintiffs' petition and defendant's cross-petition. Plaintiffs' motion for new trial was overruled, from which they appeal. Defendant did not file a motion for new trial and has not cross-appealed.

Since 1970, plaintiffs owned an 80-acre tract, described as the east half of the southeast quarter of Section 16, Township 9 North, Range 9 West of the 6th P.M. On March 1, 1978, 9 days before their petition was filed, plaintiffs purchased the northeast quarter of the same section, which they had previously leased and farmed for about 5 years. The 80-acre tract purchased in 1970 is referred to as Tract 1 and is bordered on the north by the 160-acre tract purchased in 1978, which is referred to as Tract 2.

The defendant owns 280 acres described as all of the north half of Section 15, Township 9 North, Range 9 West of the 6th P.M., except the northwest quarter of the northwest quarter of Section 15. Those 40 acres, known as the Beukenhorst Tract, lie at the northwest corner of the defendant's land.

Section 15 lies directly east of Section 16. Thus, defendant's land is east of and adjacent to plaintiffs' Tract 2. The Beukenhorst Tract is also adjacent to plaintiffs' Tract 2, at its north end. A county road, running north and south, separates the parties' land as well as plaintiffs' Tract 2 and the Beukenhorst Tract.

The county road contains two culverts. One is located

about 150 feet north of the north-south boundary of defendant's land and the Beukenhorst Tract. It lies between plaintiffs' Tract 2 and the Beukenhorst Tract, and has been there longer than any witness could recall. In fact, it is referred to by some, significantly as will be seen later, as the original culvert. The second culvert lies about a quarter mile south, or just to the north of the north-south boundary of plaintiffs' Tracts 1 and 2, and the south boundary of defendant's land. It thus lies between plaintiffs' Tract 2 and the defendant's tract. The record is silent as to when this south culvert was installed.

The terrain in the area is generally flat. It is all irrigated. There is, however, a sufficient change in elevation so that water generally flows from the south to the northeast corner of Tract 1, from the west to the east across Tract 2, and from the east to the west across defendant's tract. There is generally a low area on both sides of the road around the south culvert.

The plaintiffs testified that the water from winter thaws and heavy rains flowed naturally to the area of the south culvert, then through the culvert and into a lagoon on defendant's land, and that the defendant blocked this flow by erecting a dike along the west boundary of his land, very close to the road and the culvert. This, in turn, caused the flow of water to back up and flood a large area of plaintiffs' land.

Plaintiffs rely upon *Block v. Franzen*, 163 Neb. 270, 79 N.W.2d 446 (1956), a case involving a similar situation. There, the parties owned adjoining farms, wherein a large, landlocked pond lay across the common boundary, partly on each piece of land. The defendants built a dike along their side of the common boundary so as to prevent water flowing into the pond on plaintiffs' land from reaching the area of the pond on defendants' land. Plaintiffs sought an injunction to compel removal of the dike. There, a material question of fact, as it is here, was whether the pond was a permanent lake. In that regard, we said, "In Lackaff v.

Bogue, 158 Neb. 174, 62 N. W. 2d 889, it was stated: 'Surface waters comprehend waters from rains, springs, or melting snows which lie or flow on the surface of the earth but which do not form part of a watercourse or lake.' ... '"Surface waters cease to be such when they empty into and become part of a natural stream or lake, but they do not lose their character as such by reason of their flowing from the land on which they first make their appearance onto lower land in obedience to the law of gravity, or by flowing into a natural basin from which they normally disappear through evaporation or percolation, * * *."'" *Block v. Franzen* at 277-78, 79 N.W.2d at 450.

There, we affirmed the injunction granted by the trial court for the reason that "Here the waters in the pond clearly come within the classification of permanent waters in a lake. The rules as to the right to defend against surface waters do not apply." *Block v. Franzen* at 278, 79 N.W.2d at 451. We went on to apply the rule that: "The owner of a lake wherein the surface water from the surrounding land accumulates, and from which it has no means of escape except by evaporation or percolation, cannot lawfully, by means of a ditch or dike, discharge such water upon the land of his neighbor without his consent, to his injury." *Block v. Franzen* (syllabus of the court).

Therefore, we must first determine whether the lagoon or pond plaintiffs describe on defendant's tract was such a body of water as to prevent defendant from diverting the natural accumulation of surface water into it.

The evidence varies considerably as to the amount of water that ponded on defendant's land. The defendant testified that from the time he purchased the land in 1957, he farmed crops every year and in only one year, 1967, a particularly wet year, did he lose some crops to water. Plaintiff John Sullivan testified that the spring thaws and heavy rains created a pond of 50 to 60 acres in the area near the south culvert, and

that this was an annual occurrence. However, there is no direct testimony, or even the inference, that whatever water ponded on defendant's tract remained there throughout the entire year. To the contrary, the evidence indicates that, at worst, the water stood only from spring until fall. Plaintiffs put in evidence two photographs of the area involved. One was taken in the fall of 1977, shortly after the defendant built the dike. There not only is no water, but the ground appears to be dry. The other picture was taken in the spring of 1978. It shows the last of the winter's snow, and the ground is generally wet. It also shows water standing in the ditch alongside the county road and between the road and the dike, but this water *does not extend to the dike*. Defendant introduced a picture of the property taken in May 1978, some time after plaintiffs' picture. The picture shows the ground to be wet between the dike and the road but no water is standing, even in the ditch next to the road.

The trial judge made a visual inspection of the area approximately the last week of March 1979. What he observed is not reflected in the record. This is a case that makes the following rules particularly appropriate: "[A]ctions in equity, on appeal to this court, are triable de novo . . . subject, however, to the condition that when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite." *Tilden v. Beckmann*, 203 Neb. 293, 297-98, 278 N.W.2d 581, 584-85 (1979). "It is the duty of this court, on review of the findings made by a trial court when it has made an inspection of the premises and has given consideration to the competent and relevant facts revealed thereby, to give weight thereto." *Rolfsmeyer v. Seward County*, 182 Neb. 348, 355, 154 N.W.2d 752, 757 (1967).

We are convinced that whatever ponding occurs on

defendant's land is, at most, seasonal and, even if it is considered a basin wherein waters flow, such water normally disappears through evaporation or percolation. Thus, there is no permanent pond or lake.

We also determine that the waters involved are surface waters. "Surface waters are waters which appear upon the surface of the ground in a diffused state, with no permanent source of supply or regular course, which ordinarily result from rainfall or melting snow." *Kuta v. Flynn*, 182 Neb. 479, 481, 155 N.W.2d 795, 797 (1968); *Rolfsmeyer v. Seward County* at 350, 154 N.W.2d at 754.

There is no question but that these are waters from rains and melting snow. The law in Nebraska is that "[d]iffused surface waters, which ordinarily result from rainfall and melting snow and having no permanent source of supply or regular course, may be dammed, diverted, or otherwise repelled by an adjoining landowner without liability, if it is necessary and done without negligence." *Kuta v. Flynn* (syllabus of the court).

It is obvious the waters have no permanent source of supply. They also have no regular course. As the lands in the area were turned to irrigation, numerous and substantial changes were made to divert and contain surface waters to maximize the use of the land for growing crops. Plaintiffs' 80-acre tract (Tract 1) long ago had an irregular natural drainage south to north which took the waters on into their 160-acre tract (Tract 2) and into a natural basin in the area of the north culvert, on both sides of the road. Eventually, dikes were built along the road on both the Beukenhorst Tract and on plaintiffs' Tract 2 and considerable leveling was done. Also, a large dike was built east and west along the boundary between plaintiffs' Tracts 1 and 2. These combined changes stopped the previous course of the waters to the basin at the north culvert. Now plaintiffs collect the surface waters on their north tract in an irrigation pit built there in 1966. They could

also empty the flow of surface water on their south tract through a culvert in the dike separating their two tracts into the same irrigation pit, but they have elected not to do this but instead to allow these waters to accumulate in the low area around the south culvert. We find that these waters are diffuse surface waters and do not drain into a permanent pond or lake. We, therefore, conclude that, to whatever extent defendant's dike may repel these waters, the defendant is well within his rights to maintain it.

Plaintiffs finally assign as error the refusal of the trial court to consider newly discovered evidence as a ground for their motion for new trial. The evidence consisted of four photographs, one taken on March 26, 1979, and three taken in May 1979, all being evidence obtained after trial of the case. The photograph taken in late March shows a small break in defendant's dike and a considerable amount of water accumulated to the east of the dike on defendant's land.

"[E]vidence of facts happening after trial ordinarily cannot be considered as newly discovered evidence on which to justify the granting of a new trial." *Wagner v. Loup River Public Power District*, 150 Neb. 7, 12, 33 N.W.2d 300, 303 (1948). "A new trial will not be granted on the ground of newly discovered evidence where it appears that such evidence was not available at the time of the trial, but rather the result of changed conditions since." *Id.* at 11, 33 N.W.2d at 303. "In any but a very extraordinary case in which an utter failure of justice will unequivocally result, a verdict on the evidence at the trial will not be set aside and a new trial granted on the basis of evidence of facts occurring subsequent to such trial." *Id.* at 12, 33 N.W.2d at 304.

We find no merit to this assignment. There is nothing extraordinary about the case or this evidence. At trial, there was evidence that waters had accumulated on defendant's land in previous years from rains and spring thawing of snow. The key issue is whether such accumulations of water were diffuse surface waters

flowing into a permanent pond or lake. We have held they are not, notwithstanding that such accumulations may occur in any given spring of a year. Therefore, this evidence does not help plaintiffs. Moreover, we note that plaintiffs themselves in their motion for new trial state that "such evidence was available to the Judge at the time he viewed the scene . . . ." What the trial judge observed is a matter of evidence whether or not his findings thereof are recorded. If the condition in the picture taken March 26, 1979, was there when the trial judge viewed the area, then such evidence is cumulative, at best, and the trial court was well within its discretion in refusing to receive the photographs.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.