IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VESPER V. FRANCIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BRUCE M. VESPER, APPELLANT,

V.

DAWN FRANCIS, NOW KNOWN AS DAWN FRANCIS-THARP, APPELLEE.

Filed August 24, 2021.    No. A-21-009.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge. Affirmed.

Avis R. Andrews for appellant.

Corey J. Wasserburger, of Johnson, Flodman, Guenzel & Widger, for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

Bruce M. Vesper appeals from the order of the district court for Saunders County denying his application to modify custody, denying his request to change the minor child's surname, and denying his request for attorney fees. Based on the reasons that follow, we affirm.

## II. BACKGROUND

### 1. PROCEDURAL BACKGROUND

Vesper and Dawn Francis, now known as Dawn Francis-Tharp (Francis-Tharp), are the parents of Alexander David Francis, born in September 2011. The parties were never married, and Vesper is not listed on Alexander's birth certificate.

In November 2012, the district court entered an order determining that Vesper was Alexander's biological father and awarding sole legal and physical custody to Francis-Tharp,

- 1 -

subject to Vesper's reasonable visitation. The court noted that Vesper and Francis-Tharp "do not cooperate well enough to support a joint custody arrangement." This court affirmed the order of the district court. See *Vesper v. Francis*, No. A-12-1168, 2013 WL 5530281 (Neb. App. Oct. 8, 2013) (selected for posting to court website).

In 2016, Vesper filed an application for modification of the custody order and a request that Francis-Tharp be found in contempt for failing to allow Vesper his parenting time. The district court denied both the application to modify and the application for citation for contempt. The court noted again that "[t]he relationship between the parties has been historically hostile and contentious." This court affirmed. See *Vesper v. Francis*, No. A-16-442, 2017 WL 582731 (Neb. App. Feb. 14, 2017) (selected for posting to court website.)

In September 2019, Vesper filed the instant application for modification of custody. He alleged that Francis-Tharp had failed to provide a stable environment for Alexander, that Francis-Tharp's marriage was detrimental to Alexander's welfare, that Alexander had received unexplained injuries while in Francis-Tharp's care, that Francis-Tharp failed to communicate with Vesper regarding Alexander, that Francis-Tharp had failed to properly supervise Alexander, and that both parties had experienced a change in income. Vesper requested sole legal and physical custody, a recalculation of child support, and costs and attorney fees. He also requested that Alexander's surname be changed to Vesper.

At the time of the trial, Vesper was entitled to parenting time every other weekend from Friday at 6 p.m. to Sunday at 5 p.m., and every Wednesday from 5 to 8 p.m. The court ordered that exchanges were to take place at the police station in Fremont at the start of Vesper's parenting time and at the sheriff's department in Wahoo at the end of his parenting time.

Trial was held on August 13, 2020.

## 2. VESPER'S TESTIMONY

At the time of trial, Vesper lived in Fremont, Nebraska, and was employed as a truck driver. He worked from 7:30 a.m. to 4 p.m. every weekday and from 7:30 a.m. to 11:30 a.m. on Saturdays. Vesper testified that he had been continuously employed since the prior modification proceedings and was current with his child support obligations.

Vesper testified that Francis-Tharp had moved several times since the previous trial. In 2016, she moved from Cedar Bluffs, Nebraska, to Ceresco, Nebraska; subsequently, Francis-Tharp moved again, this time to Prague, Nebraska. In January 2017, Francis-Tharp informed Vesper that she was moving back to Cedar Bluffs. Francis-Tharp moved for the final time in November 2018 to Hooper, Nebraska. Vesper testified that at some point following her relocation to Hooper, Francis-Tharp moved out of her home due to difficulties in her marriage. However, Francis-Tharp and her husband reconciled approximately a month later.

Vesper testified that Alexander had attended school in Cedar Bluffs from preschool through first grade and that he had completed second grade at Logan View public school in Hooper. At the time of trial, Alexander was preparing to enter third grade at Logan View. Vesper testified that if he were awarded custody, Alexander would resume school in Cedar Bluffs. According to Vesper, Alexander had several friends in Cedar Bluffs. He testified that in contrast, Alexander did not have as many friends or social opportunities at Logan View due to its rural

location. Vesper testified that he took a "very active role" in Alexander's education because Francis-Tharp did not communicate with him.

Vesper testified about ongoing communication issues between himself and Francis-Tharp, stating that in general, Francis-Tharp refused to speak with him about Alexander's care and needs. He also testified that the parties frequently experienced conflict with respect to the location of parenting time exchanges. Vesper testified that Francis-Tharp sometimes refused to allow him to exercise his parenting time. He testified that once when he failed to return Alexander at the scheduled time, Francis-Tharp denied his next visit. Another time, Francis-Tharp's husband was exposed to COVID-19, and Francis-Tharp did not permit Vesper his Wednesday evening visitation because the household was ordered to quarantine for 14 days.

Vesper presented evidence of physical injuries sustained by Alexander during Francis-Tharp's parenting time. These injuries included a black eye and "marks" along the length of Alexander's spine. Vesper testified that he did not find Francis-Tharp's explanation that Alexander received the black eye at school to be credible and that she did not answer his questions about the bruises. Vesper additionally testified about an incident in January 2018 where Alexander walked to school in 15 degree weather in an unbuttoned coat and with only one glove.

At the time of trial, Francis-Tharp was married to Adam Tharp. Vesper testified that Francis-Tharp and her husband had been involved in domestic altercations throughout their 6 or 7 years of marriage. He testified that Tharp had threatened him and made rude and vulgar comments toward him while in Alexander's presence. Vesper testified that his negative interactions with Tharp were frequent and often included threatening text messages. He testified that he was concerned about Alexander's safety while living with Tharp because he considered Tharp to be a "violent individual."

Vesper explained that he was requesting that Alexander's surname be changed because it would bring stability to the child's life. He testified that Alexander's surname was different from that of everyone living in Francis-Tharp's home. He testified that Francis-Tharp's older children shared their father's surname and that Francis-Tharp herself used only "Tharp" in social situations. He claimed that "the only reason why [Francis-Tharp] is keeping the Francis [surname] is to literally stop me from having my son's last name."

On cross-examination, Vesper admitted that Francis-Tharp did communicate with him, albeit only through text messages. Vesper testified that he treated Francis-Tharp with "respect and honesty." However, he admitted to sending messages which criticized Francis-Tharp's appearance and clothing as well as other messages which indicated sexual interest in Francis-Tharp. Vesper admitted that some of his communications were inappropriate. Vesper agreed that when it came to parenting time exchanges, he had sometimes inconvenienced Francis-Tharp in retaliation for prior incidents where he felt she had behaved similarly. He characterized himself as a "flexible person" when it came to co-parenting Alexander.

### 3. FRANCIS-THARP'S TESTIMONY

Francis-Tharp testified that in 2016, she moved from Ceresco to Prague because her landlord decided to sell the house she and Tharp had been renting. She then lived in Prague for less than a year while searching for a home in Cedar Bluffs, where she eventually moved. After living in Cedar Bluffs for nearly 2 years, Francis-Tharp and Tharp bought an acreage near Hooper.

Francis-Tharp testified that she and her children moved out of the Hooper residence in 2019 due to issues in her marriage; however, she resumed living with Tharp after a month.

On August 5, 2019, Francis-Tharp contacted law enforcement because Tharp was "acting really inappropriately" toward her. Following this incident, Francis-Tharp received a protection order against Tharp. She wrote in her application for the protection order that on August 5, Tharp had broken doors, thrown her belongings, and fired several gunshots outside the house. The application also stated that Tharp threatened suicide "on at least a weekly basis," that he refused to take medications to treat his mental illnesses, and that he had previously threatened to kill Vesper. Francis-Tharp later requested that the protection order be vacated, and her request was granted. She testified that Alexander was not present when the August 5 incident occurred.

Francis-Tharp testified that there were no longer any firearms stored in her home. She testified that Tharp had participated in anger management classes and was taking his prescribed medications. She further testified that she and Tharp had begun attending church and were in counseling with a pastor. Francis-Tharp stated that if Tharp ever behaved violently again, she would "absolutely not" remain married to him.

At the time of trial, Francis-Tharp was not employed. She testified that she had been continuously employed since the previous modification trial in 2016, but she voluntarily resigned from work during the COVID-19 pandemic so that she could homeschool her children.

Francis-Tharp testified that her relationship with Vesper was not positive. When Tharp was exposed to COVID-19 and the entire household was advised to quarantine, Vesper accused Francis-Tharp of lying and contacted Tharp's manager. Francis-Tharp testified that Tharp lost his job shortly afterward. She testified that she was generally uncomfortable interacting with Vesper and that she felt intimidated around him. Francis-Tharp conducted all of her communications with Vesper through text message to keep a record of "what we talked about and what we agreed upon," and she expressed fear that Vesper might use information she communicated with him in order to hurt her. She testified that she was concerned for Alexander's wellbeing if the custody arrangement were to be modified.

On the issue of Alexander's name, Francis-Tharp testified that she had wanted to name her son "Alexander David Francis," while Vesper preferred the name "Mason David Vesper." She testified that after Alexander was born, Vesper and his extended family referred to Alexander as "Mason." Francis-Tharp testified that the disagreement surrounding Alexander's first name had confused the child and caused him to struggle in school, and she stated that she did not want to add to the problem by changing Alexander's surname to Vesper. Francis-Tharp stated that she was not opposed to amending Alexander's birth certificate so that Vesper was listed as the father.

4. HEATHER FACKLAM'S TESTIMONY

Vesper presented the testimony of Heather Facklam, the mother of Tharp's 16-year-old daughter. Facklam testified that she and Tharp originally shared joint legal custody of their daughter, with Tharp having sole physical custody. She testified that in December 2018 she had filed an application to modify custody and had written an affidavit in support of her application, which mentioned Tharp's anger issues. Subsequently, Facklam was awarded sole physical custody of her daughter.

## 5. DISTRICT COURT JUDGMENT

The district court ruled from the bench. The court found that Vesper had not met his burden in showing a material change in circumstances and that it was not in Alexander's best interests to modify custody.

Specifically, the court did not find sufficient evidence that Francis-Tharp had failed to provide Alexander with a stable living environment. The court found that all of Francis-Tharp's relocations had been made for proper purposes and that Alexander had not suffered academically as a result of his mother's moves. The court found that Francis-Tharp had maintained consistent employment and that Francis-Tharp's decision to voluntarily terminate work in order to homeschool her children had not inflicted financial hardship upon Alexander. The court found that Francis-Tharp provided Alexander with medical care and access to extracurricular activities.

Although the court recognized the significance of Tharp's anger issues, it found that Francis-Tharp had taken "proper steps" to protect herself and her children. In light of the evidence that Tharp was seeking treatment and had never endangered Alexander, the court found no reason to remove Alexander from his current custodial parent. The court additionally found insufficient evidence that Alexander had ever been physically abused or improperly supervised.

The court noted that the parties had a history of negative interactions, stating: "The parties do not have good communication and that has not changed." The court expressed concerns about the "unnecessary" and "inappropriate" messages Vesper had sent to Francis-Tharp.

The court found that changing Alexander's surname to Vesper was not in the child's best interests. However, the court ordered Francis-Tharp to cooperate in attempts to amend Alexander's birth certificate.

Finally, the court found that all other requests not specifically addressed, including attorney fees, were denied. A written order consistent with the district court's oral rulings was filed on November 16, 2020.

## 6. MOTION FOR NEW TRIAL

Vesper filed a motion for new trial. As relevant to this appeal, he alleged that he was entitled to a new trial because Francis-Tharp's testimony had subjected him to unfair surprise and because there existed newly discovered evidence. Vesper filed an affidavit in support of his motion.

In a written order, the district court found that Vesper had failed to request a continuance following the alleged surprise at trial and that his presented evidence was newly discovered only because it pertained to events that had occurred subsequent to trial. Therefore, the court overruled Vesper's motion for new trial, citing Neb. Rev. Stat. § 29-2101 (Reissue 2016), a statute which governs new trials in criminal proceedings.

This appeal followed.

## III. ASSIGNMENTS OF ERROR

Vesper assigns nine errors, which we consolidate into four. He assigns that the district court erred in (1) denying his application for modification of custody, (2) denying his request to change Alexander's surname, (3) failing to award him attorney fees, and (4) overruling his motion for new trial.

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Vyhlidal v. Vyhlidal*, 309 Neb. 376, 960 N.W.2d 309 (2021). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.* This same standard of review applies to the trial court's decision on a request for attorney fees. *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019).

An appellate court reviews a trial court's decision concerning a requested change in the surname of a minor de novo on the record and reaches a conclusion independent of the findings of the trial court. *Westerhold v. Dutton*, 28 Neb. App. 17, 938 N.W.2d 876 (2020).

An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020).

## V. ANALYSIS

### 1. MODIFICATION OF CUSTODY

Vesper assigns that the district court erred in failing to modify custody and award him sole legal and physical custody of Alexander. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). This showing is a two-step process: First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id.*

A material change in circumstances has been defined as the occurrence of something which, had it been known to the court at the time of the initial decree or custody order, would have persuaded the court to decree differently. *Id.* If a change in custody is to be made, it should appear to the court that the material change in circumstances is more or less permanent or continuous and not merely transitory or temporary. *Id.*

In support of his argument that there existed a material change in circumstances, Vesper points to evidence showing that Francis-Tharp moved several times, that she placed Alexander in a new school following her latest relocation to Hooper, and that Francis-Tharp "failed to maintain gainful employment." Brief for appellant at 25. Vesper additionally argues that the testimony surrounding Tharp's mental illnesses and anger issues support modifying custody. Finally, Vesper highlights the injuries he documented on Alexander as well as the communication issues between the parties.

In this case, the district court found that Vesper did not prove that Francis-Tharp had provided Alexander with an unstable living environment. The court specifically stated that although Francis-Tharp had moved several times since 2016, each move had been made for a proper purpose. During this period, Alexander only changed schools once, and there was no

- 6 -

evidence that Alexander's academic needs were neglected. On appeal, Vesper argues that Francis-Tharp failed to maintain gainful employment; however, the uncontroverted testimony at trial showed that Francis-Tharp had been steadily employed up until the time she voluntarily resigned from work in order to homeschool her children during the COVID-19 pandemic.

The district court acknowledged the significance of Tharp's mental health issues and the potential consequences to Alexander. However, the court found that Tharp was seeking treatment and counseling. Vesper did not present any evidence showing that either Francis-Tharp or her husband had ever physically or verbally abused Alexander. Although Vesper submitted into evidence photographs of injuries to Alexander, the district court determined--and we agree--that the bruises and black eye are not indicative of a pattern of abusive behavior and are better explained as normal injuries experienced by an active 8-year-old boy.

Both Vesper and Francis-Tharp presented evidence of inappropriate behavior with respect to parenting time exchanges and text message communications. The district court found that the parties' relationship continues to be negative and that nothing had changed following the prior modification proceedings. We agree. The parties' poor communication is nothing new, and it does not constitute a material change in circumstances.

The district court's comments from the bench thoroughly examined the evidence presented, including the apparent conflicts between Vesper's and Francis-Tharp's testimonies. We are mindful that where credible evidence is in conflict on a material issue of fact, we may consider, and give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. See *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Based on our de novo review of the record, we cannot say that the district court abused its discretion in concluding that Vesper failed to prove that a material change in circumstances existed which warranted a modification of custody. Because Vesper did not prove there had been a material change in circumstances, we need not consider whether modification of custody was in the child's best interests. This argument fails.

2. SURNAME OF MINOR CHILD

Vesper next assigns that the district court erred in denying his request to change Alexander's surname from Francis to Vesper. The question of whether the name of a minor child should be changed is determined by what is in the best interests of the child. *Westerhold v. Dutton*, 28 Neb. App. 17, 938 N.W.2d 876 (2020). See, also, *State on behalf of Connor H. v. Blake G.*, 289 Neb. 246, 856 N.W.2d 295 (2014). The party seeking the change in surname has the burden of proving that the change in surname is in the child's best interests. *Westerhold v. Dutton, supra*. Cases considering this question have granted a change only when the substantial welfare of the child requires the surname to be changed. See *id*.

The Nebraska Supreme Court has set forth a list of nonexclusive factors to consider in determining whether a change of surname is in the child's best interests. See, *In re Change of Name of Slingsby*, 276 Neb. 114, 752 N.W.2d 564 (2008); *In re Change of Name of Andrews*, 235 Neb. 170, 454 N.W.2d 488 (1990). These factors are (1) misconduct by one of the child's parents; (2) a parent's failure to support the child; (3) parental failure to maintain contact with the child; (4) the length of time that a surname has been used for or by the child; (5) whether the child's surname is different from the surname of the child's custodial parent; (6) a child's reasonable

preference for one of the surnames; (7) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit. *Id.*

Applying these factors, we determine that Vesper did not meet his burden in showing that changing Alexander's surname to Vesper was in the child's best interests. Nevertheless, we discuss each of these factors in turn on our de novo review of a requested change in the surname of a minor.

### (a) Parental Misconduct

The evidence showed that prior to Alexander's birth, the parties disagreed as to the name of their unborn child. Francis-Tharp testified that she had originally wanted to name their son "Alexander David Francis," while Vesper preferred the name "Mason David Vesper." For a period of time, Vesper referred to the child by the name "Mason," which caused the child some degree of confusion. Aside from this, the district court did not find that either parent had engaged in misconduct, although it noted that Vesper's text messages to Francis-Tharp were "inappropriate." This factor weighs in favor of maintaining the Francis surname.

### (b) Parental Failure to Support Child

There was no evidence that either parent had failed to properly support the minor child. This factor is neutral.

### (c) Parental Failure to Maintain Contact With Child

The evidence shows that both parents maintain frequent contact with their child. This factor is also neutral.

### (d) Length of Time Surname Has Been Used

The minor child was born in September 2011 and was nearly 9 years old at the time of trial. He had been known by the Francis surname for his entire life and was of an age where he was aware of his name and used it in academic and social situations. This factor weighs in favor of maintaining the Francis surname.

### (e) Whether Child's Surname is Different From Surname of Custodial Parent

The district court declined to modify its grant of sole legal and physical custody of the minor child to Francis-Tharp, which we affirm. Vesper presented evidence that Francis-Tharp uses only her husband's surname, Tharp, in social situations; however, Francis-Tharp testified that she uses her full hyphenated surname. This factor weighs in favor of maintaining the Francis surname.

### (f) Child's Reasonable Preference

The minor child did not testify at trial. This is a nonfactor.

### (g) Effect on Preservation and Development of Child's
### Relationship With Each Parent

At trial, Vesper testified that changing Alexander's surname would bring a sense of stability to the minor child's life and would give the child a greater sense of connection to Vesper. However, we determine that Vesper has been given ample opportunities to forge a connection with his son through the district court's award of parenting time. Alexander retaining the Francis surname will do little to hinder Vesper's ability to preserve and develop a relationship with his son. This factor weighs in favor of maintaining the Francis surname.

### (h) Degree of Community Respect Associated With Child's
### Present Surname and Proposed Surname

There was no evidence presented at trial which suggested that either the Vesper surname or the Francis surname carry anything but respect within the community. This factor is neutral.

### (i) Difficulties, Harassment, or Embarrassment Child May
### Experience From Bearing Either Surname

There is nothing in the record to suggest that bearing either party's surname would cause the minor child any difficulty, harassment, or embarrassment. This is a nonfactor.

### (j) Identification of Child as Part of Family Unit

As previously mentioned, legal and physical custody of the minor child has been maintained by Francis-Tharp since 2012, and we affirm the district court's decision on custody. Vesper correctly argues that there are individuals who live with Francis-Tharp who do not share the Francis surname; however, the child's mother does share the name. We note that Vesper did not present any evidence showing that there exists a bonded family unit which uses the Vesper surname which Alexander may be alienated from in the event the child's surname is not changed. This factor weighs in favor of maintaining the Francis surname.

### (k) Conclusion

Based on the factors set forth in *In re Change of Name of Slingsby*, 276 Neb. 114, 752 N.W.2d 564 (2008) and *In re Change of Name of Andrews*, 235 Neb. 170, 454 N.W.2d 488 (1990), we conclude that Vesper did not meet his burden in showing that changing Alexander's surname to Vesper was in his best interests. We agree with the conclusion reached by the district court. The minor child shall retain the Francis surname.

### 3. ATTORNEY FEES

Vesper next assigns that the district court erred in failing to award him attorney fees relating to his application for modification.

A party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when the Nebraska Supreme Court has recognized and accepted a uniform course of procedure for allowing attorney fees. *White v. White*, 296 Neb. 772, 896 N.W.2d 600 (2017). A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases, as well as in modification actions. See *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

Because Vesper failed to prove a material change of circumstances existed to warrant modification of custody, and because his application for modification and request for name change were both denied, we cannot say that the district court abused its discretion in failing to award him attorney fees. This argument fails.

### 4. MOTION FOR NEW TRIAL

Lastly, Vesper assigns that the district court erred in overruling his motion for new trial. In support of this assignment, he argues that he presented evidence to the district court which showed that Francis-Tharp did not testify truthfully at trial, that Tharp behaved erratically following trial, and that Francis-Tharp interrupted Vesper's parenting time at some point after trial. He further argues that the district court erred in applying the provisions of § 29-2101, which applies to criminal trials, rather than Neb. Rev. Stat. § 25-1142 (Reissue 2016), the statute governing new trials in civil matters.

As an initial matter, we agree that the district court's order improperly referenced Nebraska's criminal procedure statutes rather than the appropriate new trial statute from chapter 25 of the Nebraska Revised Statutes. However, we believe this to be a mere clerical error, and on appeal, Vesper does not argue that he was prejudiced by the district court's reference to § 29-2101 instead of § 25-1142. Further, we presume that the judge was familiar with and applied the proper rules of law unless it clearly appears otherwise. See, *Randy S. v. Nicolette G.*, 302 Neb. 465, 924 N.W.2d 48 (2019) (applying this presumption in bench trial of paternity proceedings); *State v. Mucia*, 22 Neb. App. 821, 862 N.W.2d 89 (2015) (applying this presumption in jury-waived criminal trial).

Under § 25-1142, a new trial is a "reexamination in the same court of an issue of fact after a verdict by a jury, a report of a referee, or a trial and decision by the court." Section 25-1142 provides several grounds under which a court must vacate its former decision. On appeal, Vesper argues that he was entitled to a new trial under subsection (3), which provides for a new trial in instances of "'accident or surprise, which ordinary prudence could not have guarded against'" and under subsection (7), pertaining to "'newly discovered evidence . . . which the moving party could not, with reasonable diligence, have discovered and produced at the trial.'" Brief for appellant at 32-33.

### (a) Unfair Surprise

Vesper argues that he was subjected to unfair surprise at trial when Francis-Tharp testified that prior to Alexander's birth, she had communicated with Vesper about potential names for their son. He claims that this testimony was inconsistent with Francis-Tharp's testimony at the previous modification proceedings.

It has been held that a variance between the testimony of a witness at the present trial and at a former trial does not require a new trial on the ground of surprise where the variance is immaterial. *Riesland v. Dawson County Irrigation Co.*, 134 Neb. 773, 279 N.W.2d 726 (1938). Additionally, a motion for new trial on the ground of surprise is properly overruled where a request for a continuance for that reason was not made at the trial. *Schroll v. Fulton*, 213 Neb. 310, 328 N.W.2d 780 (1983).

Vesper did not move for a continuance following the alleged surprise caused by Francis-Tharp's testimony. On that basis alone, the district court properly overruled the motion for new trial. In addition, whether or not Francis-Tharp and Vesper communicated in 2011 about the name of their unborn child is not material either to a modification of custody or a change of the child's surname. Such evidence tends only to demonstrate that the parties' relationship is poor and that it has been thus for a long period of time--a fact already established by other evidence in the record. Vesper is not entitled to a new trial on the grounds of unfair surprise.

### (b) Newly Discovered Evidence

Vesper argues that he was entitled to a new trial based upon newly discovered evidence relating to both Tharp's mental health and Francis-Tharp's interactions with Vesper. Vesper's affidavit detailed events which occurred approximately 4 months after trial, and the affidavit further alleged that Francis-Tharp had denied Vesper "almost all parenting time since trial."

Newly discovered evidence is evidence *in existence at the time of trial*, but which could not, by reasonable diligence, have been procured. *Wagner v. Loup River Public Power District*, 150 Neb. 7, 33 N.W.2d 300 (1948). A new trial will not be granted on the ground of newly discovered evidence where it appears that such evidence was not available at the time of the trial, but rather the result of changed conditions since. *Id.* Further, "[i]n any but a very extraordinary case in which an utter failure of justice will unequivocally result, a verdict on the evidence at the trial will not be set aside and a new trial granted on the basis of evidence of facts occurring subsequent to such trial." *Id.* at 12, 33 N.W.2d at 304.

The district court found that the evidence Vesper presented pertained to events which occurred subsequent to trial, and that although such facts may be relevant to a future modification or contempt action, they did not establish a basis upon which to grant a new trial. We agree. The district court properly denied Vesper a new trial on the grounds of newly discovered evidence.

## VI. CONCLUSION

We conclude that the district court did not abuse its discretion in denying Vesper's application for modification of custody, in failing to award Vesper attorney fees, or in overruling Vesper's motion for new trial. We further determine that the district court did not err in finding that it was not in the child's best interests to change his surname. Accordingly, we affirm the order of the district court.

AFFIRMED.